375 A.2d 1267

COMMUNITY COLLEGE OF BEAVER COUNTY

v.

COMMUNITY COLLEGE OF BEAVER COUNTY,
SOCIETY OF THE FACULTY (PSEA/NEA),
Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 21, 1976.

Decided July 8, 1977.

578

John R. DeAngelis, Pittsburgh, for appellant.

James S. Ruffner, Craig & Ruffner, Aliquippa, Thomas H. M. Hough, Lucchino, Gaitens & Hough, Pittsburgh, for appellee.

Lewis F. Adler, J. R. Colton, Harrisburg, for amicus curiae.

Thomas H. Lane, John D. Thrush, Sp. Counsel for Com. of Pa., Harrisburg, for intervenor appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

We granted allowance of appeal in this case to consider two questions of public employee labor law to which we adverted but left unresolved in an earlier opinion.[1] First, does the Arbitration Act of 1927, 5 P.S. §§ 161–181, apply to arbitrations conducted pursuant to collective bargaining agreements governed by the Public Employee Relations Act of 1970 ("PERA"), Act of July 23, 1970, P.L. 563, No. 195, Art. I, § 101 *et seq.*, 43 P.S. §§ 1101.101–1101.2301 (Supp.1976–77); and second, if so, what is the standard of judicial review applicable where the arbitrator's award is based on an interpretation of the collective bargaining agreement?[2]

1. *International Brotherhood of Firemen and Oilers, AFL–CIO, Local 1201 v. School District of Philadelphia*, 465 Pa. 356, 361–66, 350 A.2d 804, 807–809 (1976).

2. A procedural question is also involved, viz., whether review of such an award is to be had in the court of common pleas or the Commonwealth Court. See part I, *infra*.

It is unnecessary at this point to give the particulars of the dispute giving rise to this appeal. Suffice it to say that pursuant to a retrenchment program, the appellee-College discharged two full-time faculty members; the propriety of this action is not here questioned. Later, the College created certain part-time positions, to which new employees were appointed. The sole issue in arbitration was whether under the collective bargaining agreement the two retrenched teachers had employment rights with respect to the part-time positions. The arbitrator held that they did; the Commonwealth Court disagreed, and set aside the award. *Community College of Beaver County v. Community College of Beaver County (Society of the Faculty PSEA/NEA)*, 17 Pa.Cmwlth. 231, 331 A.2d 921 (1975). This appeal followed.

I.

At the threshold of this case we are met with a procedural question involving jurisdiction to review arbitration awards in public employment situations. The question is whether a challenge to the arbitrator's award by the aggrieved party (here the employer-College) should be made in the court of common pleas or in the Commonwealth Court.

At the time of the arbitrator's award in this case (April, 1974) access to judicial review of the award could be sought through either of two inconsistent avenues. One, section 13 of the Arbitration Act of 1927, 5 P.S. § 173, provided generally that within three months after the filing of the arbitrator's award a motion to vacate, modify or correct the award could be filed in a court of common pleas.[3] The second approach was af-

---

**3.** Although Sec. 173 itself does not in terms name the court of common pleas, but refers to the "prothonotary's office of the court in which the application" to vacate, modify or correct an award is made, it is manifest from the earlier sections of the Act of 1927, that the court there referred to is the court of common pleas of the county having jurisdiction. See 5 P.S. §§ 167–171.

forded by a Rule of Judicial Administration, Pa.R.J.A. 2101 (since superseded), which provided:

"Review of Arbitration Awards in Public Employment Disputes.

(a) Review of an award of arbitrators appointed in conformity with an Act of Assembly to arbitrate a dispute between a public employer and employe shall be sought exclusively in the Commonwealth Court. The application for review shall be filed within thirty (30) days after the date of the award of the arbitrators."

The Commonwealth Court held that Pa.R.J.A. 2101 was applicable to contract interpretation arbitrations pursuant to PERA collective bargaining agreements and that the rule, which we had adopted in May, 1973 without explanatory comment, took precedence over the contrary procedure set forth as section 13 of the Arbitration Act of 1927. 17 Pa.Cmwlth. 231, 331 A.2d 921 (1975). We think it was correct in so holding.

It is urged upon us by the Community College [4] and by the Commonwealth, as intervenor, who seek to assure what they consider to be the broader scope of review obtainable under the Act of 1927, that Pa.R.J.A. 2101 should be taken as applying only to what are termed "interest" arbitrations such as arise under Act No. 111, 43 P.S. § 217.1 *et seq.* (Supp.1976–77) (collective bargaining between police and fire units and their public employers), and not to arbitrations involving interpretation of PERA collective bargaining agreements. Thus they argue that the court of common pleas was the proper forum in which to seek review of the instant award.

---

**4.** Although it was the College which sought review in the Commonwealth Court under Pa.R.J.A. 2101, it did so as a matter of prudence, believing that the correct procedure was to seek vacation of the award in the Court of Common Pleas of Beaver County pursuant to the Act of 1927, a step which it took concurrently with its application to the Commonwealth Court. The Beaver County proceeding was vacated by the Commonwealth Court when it accepted the College's application for review.

We note that since the date of the Commonwealth Court's decision in this case Pa.R.J.A. 2101 has been superseded by Rule 703 of our new Rules of Appellate Procedure and by Rule 247 of the Rules of Civil Procedure. Rule 703 provides:

"Arbitration Awards in Public Employment Disputes

A petition for review of an award of arbitrators appointed in conformity with statute to arbitrate a dispute between the Commonwealth and an employee of the Commonwealth shall be filed in the Commonwealth Court. The petition for review shall be subject to Chapter 15 (judicial review of governmental determinations) and shall be deemed an appeal from an administrative agency for the purposes of Rule 1101(a) (1) (appeals as of right from the Commonwealth Court)."

This Rule became effective July 1, 1976. By its terms it covers only review of arbitration awards in disputes between the Commonwealth and its employees, whereas Pa.R.J.A. 2101 embraced disputes between all public employers and their employees. Accordingly, a new Rule of Civil Procedure, Pa.R.C.P. 247, was promulgated concurrently, and likewise became effective on July 1, 1976. It provides:

"Review of Arbitration Awards in Local Public Employment Disputes

(a) Review of an award of arbitrators appointed in conformity with an Act of Assembly to arbitrate a dispute between a public employer and employee not within the scope of Rule 703 of the Pennsylvania Rules of Appellate Procedure shall be sought exclusively in the courts of common pleas. The application for review shall be filed within thirty (30) days after the date of the award of the arbitrators."

Explanatory comment which accompanied the promulgation of both Pa.R.A.P. 703 and Pa.R.C.P. 247 notes that

the rules relate to "arbitrators such as those appointed under the Act of June 24, 1968, P.L. 237, 43 P.S. § 217.1 *et seq.* [Act No. 111]."

The parties hereto correctly trace the origin of Pa.R. J.A. 2101 to our decision in *City of Washington v. Police Department*, 436 Pa. 168, 259 A.2d 437 (1969), and our prior Pennsylvania Supreme Court Rule 68½. In *City of Washington* we held that notwithstanding the statutory prohibition against appeals from binding arbitration awards under Act No. 111 (police and fire unit collective bargaining), this Court would nevertheless entertain a petition to review an Act No. 111 arbitration award pursuant to Rule 68½ (narrow certiorari) with issues limited to jurisdiction, regularity of proceedings, questions of the exercise of nonexistent power, and questions of violation of constitutional rights. When Rule 68½ was omitted from a revision of this Court's rules in 1972, Pa.R.J. A. 2101 was promulgated to provide for review of arbitration awards under such circumstances.

It must be acknowledged that neither at the time Pa.R.J.A. 2101 was promulgated (1973), nor at the time it was superseded and replaced by Pa.R.A.P. 703 and Pa.R.C.P. 247 (1976), did this Court have specifically in mind review of arbitration awards under the PERA.[5] The Commonwealth Court in its opinion correctly pointed out, however, that "interest" arbitration such as that conducted under Act No. 111 is also provided for in the PERA with respect to bargaining impasses reached in disputes with units of employees which by the PERA are forbidden to strike. 43 P.S. § 1101.805 (Supp.1976–77) (guards and court personnel). Any attempt to limit Pa. R.A.P. 703 and Pa.R.C.P. 247 to "interest" arbitration would require us to say that some PERA arbitration is

5. When we first promulgated Pa.R.J.A., we did not cite the Arbitration Act of 1927 as partially superseded. Nor did we cite that Act as partially superseded in promulgating the Pennsylvania Rules of Appellate Procedure or Pa.R.C.P. 247.

reviewed pursuant to those two rules and other PERA arbitration is reviewed by the procedure set forth in the Arbitration Act of 1927. Such a distinction, of course, is nowhere apparent in the text of the Act of 1927, which long preceded the PERA and the rules, or in the two rules of procedure. We agree with President Judge Bowman in his opinion below that "it would be incongruous to find the Act of 1927 applicable to arbitration awards issued under section 903 and the Public Employe Relations Act while section 805 arbitration awards under the same statute are within the scope of Pa.R.J.A. No. 2101." 17 Pa.Cmwlth. at 236, 331 A.2d at 924.

We conclude that review of arbitrators' awards in the public employment sector generally was properly sought at the time of the instant award under Pa.R.J.A. 2101 (i. e., in the Commonwealth Court), and is now to be sought by the procedure specified in Pa.R.A.P. 703 or Pa.R.C.P. 247, as the case may be, and that the procedure for seeking review set forth in section 13 of the Arbitration Act of 1927, 5 P.S. § 173, has been *pro tanto* superseded. The access to judicial consideration of this case was accordingly properly through the Commonwealth Court.

We come now to the substantive issues involved in this appeal. We hold, as did the Commonwealth Court, that the Arbitration Act of 1927 does apply to arbitration pursuant to PERA collective bargaining agreements; we hold also, contrary to the Commonwealth Court, that under the standard of review contained in that Act the award of the arbitrator should be upheld. This requires that we reverse the order appealed from and reinstate the award. In the discussion of these questions which follows we find it convenient to consider first the standard of review and then the applicability of the Act of 1927. We shall then address the application of the statutory standard to the specific facts of this case.

## II.

The appellant faculty union and the public employee unions who appear as *amici curiae* urge us to adopt the standard of judicial review first announced by the Supreme Court of the United States in *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960) : [6]

> "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."

\* \* \* \* \* \* \* \*

> "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

The employer in this appeal, aided by a brief filed by the Commonwealth of Pennsylvania as intervenor, argues to the contrary that we are not at liberty to adopt a standard of review other than that set forth in the Arbitration Act of 1927, 5 P.S. §§ 170, 171. Both parties as-

---

**6.** *Enterprise Wheel and Car* was one of three federal labor decisions decided on the same day and known as the *Steelworkers Trilogy*. See *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L. Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel and Car Corp., supra*. In these three decisions the Supreme Court of the United States established the federal policy that arbitration under the collective bargaining agreement is the preferred manner of resolution of labor disputes and that the less judicial participation, the better.

sume, with some support in our case law,[7] that the statutory standard is substantially different from the *Enterprise Wheel and Car* standard and provides for much closer scrutiny of arbitration awards than does the federal standard when vacation or enforcement of the award is sought in Pennsylvania courts. One labor organization in its amicus brief is of the view that "the future of public sector labor relations in the Commonwealth depends upon" which standard is applicable.[8]

We appreciate the need for stability in the public employer-employee bargaining relationship and are in agreement that the policy of *Enterprise Wheel and Car,* while not binding upon us, is sound. As will be shown in part III, *infra,* however, we perceive no conflict between the standard of review contained in the Arbitration Act of 1927 and that recognized by federal decisional law in the field of labor relations. The two are not significantly different. By the same token, we see no incompatibility in regard to scope of review between PERA and the Act of 1927, and decline to hold the latter statute to have been impliedly and *pro tanto* repealed by PERA, as appellee requests.

## III.

The standards of judicial review set forth in the Arbitration Act of 1927 are reproduced in the margin.[9] With

7. See *Allstate Insurance Co. v. Fioravanti,* 451 Pa. 108, 116 n.6, 299 A.2d 585, 589 n.6 (1973); *International Brotherhood of Firemen and Oilers, AFL–CIO, Local 1201 v. School District of Philadelphia,* 465 Pa. 356, 363, 350 A.2d 804, 808 (1976).

8. Brief for the Pennsylvania State Education Association, amicus curiae, at 20.

9. 5 P.S. § 170. *[Motion to vacate award, grounds, rehearing]*
 "In either of the following cases the court shall make an order vacating the award upon the application of any party to the arbitration:
 (a) Where the award was procured by corruption, fraud, or undue means.

the exception of the italicized language of § 171(d), all the provisions of the two quoted sections of the Arbitration Act are verbatim adoptions of sections of a Model State Arbitration Act, which was drafted in December, 1926 by the American Arbitration Association and closely patterned after the then-existing Federal Arbitration Act, 43 Stat. 670, now codified at 9 U.S.C. § 1 *et seq.* (1970).[10] Neither the enactment of the federal statute nor the drafting of the model state statute was designed to accomplish an alteration or modification of the standards applied under the common law in reviewing arbitration awards. Examination of sections 170 and 171(a)–(c) of the Arbitration Act, *supra*, reveals that

> (b) Where there was evident partiality or corruption on the part of the arbitrators, or any of them.
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced.
> (d) Where the arbitrators exceeded their powers or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.
> Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."
> 5 P.S. § 171. *[Modifying or correcting award, grounds]*
> "In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:
> (a) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
> (d) *Where the award is against the law, and is such that it had been the verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.*
> The court may modify and correct the award or resubmit the matter to the arbitrators." (Emphasis supplied).

10. The A.A.A.'s Model State Arbitration Act can be found at 2 J. Am.Jud.Soc'y 122 (1926).

they are merely restatements of grounds already recognized at common law for vacating or modifying arbitration awards.[11]

 In the enactment of subsection (d) of § 171 of the Act of 1927, the General Assembly of Pennsylvania did add a subsection not found in the A.A.A. Model Act. That subsection provides for modification or correction of an award where it "is against the law, and is such that had it been the verdict of the jury the court would have entered different or other judgment notwithstanding the verdict." [12] This language, apparently drawn from civil litigation procedure, seeks to establish between the reviewing court and the arbitrator's award the same relationship as traditionally exists between a reviewing court and a jury's verdict. A court will enter a judgment notwithstanding the verdict if, and only if, viewing all the evidence (including inferences reasonably to be drawn therefrom) most favorably to the verdict winner, the elements of the cause of action or defense asserted have not, as a matter of law, been established. In passing on a motion for judgment n. o. v., findings of fact will not be disturbed if supported by evidence. See *Miller v. Checker Yellow Cab Co.*, 465 Pa. 82, 348 A.2d 128 (1975); *Flickinger's Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); *Metts v. Griglak*, 438 Pa. 392, 264 A.2d 684 (1970). While introduction of the "n. o. v." concept into the field of arbitration may have been a new departure, it is hardly a radical change, nor does it dictate that a much closer or different scrutiny of an arbitration

11. There was in the mid-1920s a policy debate relative to these arbitration acts, but it had nothing to do with the standard of review of arbitration awards. The debate concerned the question whether agreements to arbitrate *future* controversies should be specifically enforceable. For a discussion of the early policy debate see W. A. Sturges, *Arbitration under the New North Carolina Arbitration Statute—the Uniform Arbitration Act*, 6 N.C.L. Rev. 363 (1928).

12. See n. 9 *supra*.

award will be available than under the approach of *Enterprise Wheel and Car.*

We note that in *International Brotherhood of Firemen and Oilers, AFL–CIO Local 1201 v. School District of Philadelphia,* 465 Pa. 356, 350 A.2d 804, 809 (1976), in which we raised the question of the relationship between the Arbitration Act of 1927 and PERA, we assumed the applicability of the earlier statute and yet held that an arbitrator's interpretation of a PERA collective bargaining agreement would not be disturbed if "reasonable":

> "[W]e have concluded that even if, as the Union argues, the relatively broad standard of the Act of 1927 governs our decision, the challenge to the arbitrator's decision must fail. Under Section 11 of the Act of 1927, *supra, the arbitrator's interpretation of the contract must be upheld if it is a reasonable one.* Our review of the record reveals that in the instant case the arbitrator's construction of the collective bargaining agreement between the parties is indeed reasonable." 465 Pa. at 366, 350 A.2d at 809. (Emphasis supplied).

We note further that the Commonwealth Court, without disputing the applicability of the Act of 1927 to arbitration under the PERA, has since the date of its decision in the case at bar expressly adopted the *Enterprise Wheel and Car* "essence" standard in what is now a long line of cases. In *Brownsville Area School District v. Brownsville Education Association,* 26 Pa.Cmwlth. 241, 244, 363 A.2d 860, 862 (1976), that Court, speaking through President Judge Bowman, held that—

> "An arbitrator's award in a labor dispute is legitimate 'so long as it draws its essence from the collective bargaining agreement.' [Enterprise Wheel and Car Corp.] . . .."

See also *Commonwealth v. Pennsylvania Social Services Union,* 27 Pa.Cmwlth. 128, 365 A.2d 666 (1976); *North-*

*ern Tioga School District v. Northern Tioga School Service Personnel Association,* 26 Pa.Cmwlth. 576, 365 A.2d 167 (1976); *South Allegheny School District v. South Allegheny Education Association,* 25 Pa.Cmwlth. 282, 360 A.2d 829 (1976); *Northampton Area Board of Education v. Zahner,* 25 Pa.Cmwlth. 401, 360 A.2d 793 (1976); *School District of Duquesne v. Duquesne Education Association,* 25 Pa.Cmwlth. 216, 359 A.2d 850 (1976); *Dauphin County Technical School Education Association v. Dauphin County Area Vocational-Technical School Board,* 24 Pa.Cmwlth. 639, 357 A.2d 721 (1976); *In re Ringgold Area School District,* 24 Pa.Cmwlth. 266, 356 A.2d 842 (1976). Thus the Commonwealth Court's early approach to review of arbitration awards under the PERA, as illustrated by the case at bar, appears to have given way to what we regard as a sound standard for such review.

Subsection (d) of the Act of 1927, 5 P.S. § 171, has been the subject of two decisions by the Superior Court. In *Framlau v. Upper Dublin School Authority Board,* 219 Pa.Super. 369, 372, 281 A.2d 464 (1971), that court held that interpretation of an ambiguous written agreement, at least where the interpretive process was aided by the introduction of parol evidence, was resolution of a question of fact, citing *Baldwin v. Magen,* 279 Pa. 302, 123 A. 815 (1924). Thus it followed that an arbitrator's interpretation of such a written agreement was a decision of a factual dispute reviewable only to the extent a jury's factual findings are reviewable at common law. In *Pein v. State Farm Mutual Automobile Insurance Co.,* 241 Pa.Super. 283, 361 A.2d 348 (1976), a case involving a claim under an uninsured motorist clause in an insurance contract, the Superior Court again held that "in cases where statutory arbitration is involved resolutions of factual disputes are within the province of the arbitrator, just as they are with the fact-finding jury, or trial judge in non-jury cases." The court then reversed

the order of the court of common pleas which had set aside the arbitration award as being against the law.

On the theory that the collective bargaining agreement involved here is "ambiguous" with respect to the rights of the retrenched faculty, it would be possible, applying the well-settled common law contract classification exemplified in *Framlau, supra,* to say that the arbitrator's award is based on a finding of fact (interpretation of an ambiguous writing) and therefore not to be disturbed on review if supported by language appearing in the contract. To do so, however, would imply that the standard of review of an arbitrator's interpretation of a collective bargaining agreement turns on the common law question of whether the agreement is "ambiguous" and therefore to be interpreted by the finder-of-fact (jury) or "unambiguous" and to be interpreted by the court. We are satisfied that this is not the correct approach.

■ It has long been accepted in contract law that an ambiguous written instrument presents a question of fact for resolution by the finder-of-fact, whereas the meaning of an unambiguous written instrument presents a "question of law" for resolution by the court. As the authorities in the field of contracts make clear, however, the latter exercise is also in actuality a factual, not a legal, decision. For a variety of reasons the common law has long thought it best to leave to the court rather than to the jury the essentially factual question of what the contracting parties intended. This fact-finding function exercised by the court is denominated a "question of law," therefore, not because analytically it is a question of law but rather to indicate that it is the trial judge, not the jury, to whom the law assigns the responsibility for deciding the matter. All questions of interpretation of written instruments and agreements, in other words, are questions of fact, some in ordinary civil litigation resolved by the jury (ambiguous writings) and others re-

solved by the trial judge (unambiguous writings). See
A. Corbin, 3 *Corbin on Contracts* § 554, at 219–233
(1960); S. Williston, 4 *Williston on Contracts* § 616, at
648–649, 660–663; *Restatement (Second) of Contracts* §
238, Comment *d* (Tent. Draft No. 5, March 31, 1970).
Decisions of this Court are in accord: e. g., *Hewes v.
McWilliams*, 412 Pa. 270, 194 A.2d 339 (1963); *Easton
v. Washington County Insurance Co.*, 391 Pa. 28, 137 A.
2d 332 (1957); *Daniels Co., Contractors, Inc. v. Nevling*,
385 Pa. 276, 122 A.2d 814 (1956).

In applying the "n. o. v." standard of review of 5 P.S.
§ 171(d) ("award is against the law . . .") to ar-
bitration awards, we must therefore analyze the role
played by the arbitrator in interpreting collective bar-
gaining agreements. From what we have just said, it is
clear that the arbitrator in all cases in which inter-
pretation of the collective bargaining agreement is
called for is deciding a factual question: what the parties
intended. The division effected by the common law be-
tween ambiguous writings (interpreted by the jury) and
unambiguous writings (interpreted by the court as a
"question of law") is logically inapplicable to interpreta-
tion questions which arise in arbitration. The policy
considerations which compelled the common law to make
the division (jury illiteracy, lack of respect for writings,
etc.) are absent in the arbitration forum. *A fortiori* is
this true under a statute such as PERA, which mandates
arbitration as the exclusive means of interpreting collec-
tive bargaining agreements in the first instance. *See* 43
P.S. § 1101.903.

■ To state the matter more precisely, where a task
of an arbitrator, PERA or otherwise, has been to deter-
mine the intention of the contracting parties as evi-
denced by their collective bargaining agreement and the
circumstances surrounding its execution, then the arbi-
trator's award is based on a resolution of a question of

fact and is to be respected by the judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . .." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). It was this approach which was meant to be suggested by the brief statement in *International Brotherhood of Firemen and Oilers*, quoted *supra*, that "the arbitrator's interpretation of the contract must be upheld if it is a reasonable one." 465 Pa. at 366, 350 A. 2d at 809.

■ Although section 11(d) of the Arbitration Act of 1927 does empower Pennsylvania courts to set aside arbitration awards which are "against the law," we view the existence of this power as salutary and quite consistent both with PERA and with the approach to resolution of labor disputes exemplified in the federal scheme of things by *Enterprise Wheel and Car, supra.*

### IV.

■■ We must reject the argument made by the appellant union that the PERA impliedly repealed the Arbitration Act of 1927 insofar as it applies to collective bargaining agreements to which the Commonwealth or another public employer is a party. When there is removed from consideration the supposed conflict, discussed above, as to scope of review of awards presented by section 11(d) of the Act of 1927 and the federal case law as exemplified in *Enterprise Wheel and Car*, there is little inconsistency between the two Pennsylvania statutes.

Section 16 of the Arbitration Act of 1927 flatly provides:

"The provisions of this act shall apply to any written contract to which the Commonwealth of Pennsylvania,

or any agency or subdivision thereof, or any municipal corporation or political division of the Commonwealth shall be a party." 5 P.S. § 176.

Collective bargaining agreements under the PERA are, of course, "written contracts," and are within the above provision unless the Arbitration Act of 1927 has been impliedly repealed with respect to public employer labor contracts.[13]

▮ Statutory repeals by implication are not favored. *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.*, 461 Pa. 420, 336 A.2d 609 (1975); *George v. Moore,* 394 Pa. 419, 147 A.2d 148 (1959). The Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1971(c), instructs us that an implied repeal is not to be found "unless the two statutes are irreconcilable."

The points at which the two statutes before us conflict are essentially as set forth in our opinion in *International Brotherhood of Firemen and Oilers, AFL–CIO Local 1201,* 465 Pa. 356 at 366, n. 9, 350 A.2d 804 at 809, n. 9. PERA in section 903 permits the parties to bargain over the arbitration procedure to be followed, while section 6 of the Act of 1927 specifies a procedure. Both statutes provide that the parties may choose the manner of appointing arbitrators, but, in the event of inability to select an arbitrator, section 903(1) of the PERA provides that the Bureau of Mediation shall be utilized, while section 4 of the Act of 1927 provides for court appointment in such a case.

▮ We do not find in these few points of difference sufficient indication that the General Assembly of Pennsylvania, in enacting PERA, created such "irreconcilable conflict" as to justify a conclusion that the Act of

13. PERA, we note, does not have a general provision which repeals all prior inconsistent acts. It expressly repeals only one named statute, the prior public employee law, Act of June 30, 1947, P.L. 1183. 43 P.S. § 1101.2201.

1927 in its entirety is inapplicable to PERA labor arbitration. Where conflict does exist of course, PERA, as the most recently enacted of the two statutes, takes precedence and controls. Section 3 of the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1930.

## V.

 It remains to apply section 11(d) of the Arbitration Act of 1927, as we have construed it above, to the arbitrator's award which underlies this appeal.

The question which was presented to and decided by the arbitrator was whether full-time faculty members at the Community College of Beaver County, properly "retrenched" pursuant to a cut-back in the overall size of full-time faculty, have a preferred position with respect to subsequently created part-time positions. The arbitrator determined that they did, but the Commonwealth Court, labeling that decision "erroneous," held that they did not.

The relevant provisions of the collective bargaining agreement are set forth in the margin.[14] The Common-

14.
"Article X
SPECIAL TERM APPOINTMENTS
Special term appointments shall be given to faculty personnel for a specific period of time not to exceed one (1) year. Included in this category are faculty employed as:
1. Short-term substitutes for full-time faculty members.
2. On a part-time irregular basis.
3. A continuing education program.
4. Special program instructors funded by special program grants.
Special term employees shall hold the rank of lecturer. The terms and conditions of this agreement do not apply to those employed under special term appointments. They shall receive a written contract setting forth the terms and conditions of their employment . . .."
\* \* \* \* \* \* \* \* \* \*
"Article XXX
RETRENCHMENT
\* \* \* \* \* \* \* \* \* \*
F. *A faculty member who is retrenched from the College shall be placed on a preferred rehiring list* and shall retain all prior ac-

wealth Court reasoned that since the collective bargaining agreement does not apply to "special term appointments" (part-time teachers), Article XXX by definition therefore speaks only to the filling of vacancies covered by the agreement, i. e., full-time positions. The court also noted that the agreement contains elaborate procedures for the hiring, retrenchment and rehiring of full-time faculty, with no such mechanisms for part-time employees. The union, in reply, makes what is in our view an argument equally reasonable. It points out that Article XXX actually does grant to part-time teachers recall rights with respect to part-time positions. That fact, it is argued, suggests two corollaries: first, that the statement in Article X that the agreement does "not apply to those employed under special term appointments" cannot be taken literally; and second, that the explicit limitation of the recall rights of part-time teachers to part-time positions bespeaks an indication (through the use of the negative pregnant) that full-time teachers on the preferred rehiring list are to have recall rights with respect to both kinds of positions. Because either of these views advanced by the parties is "reasonable," i. e., can be ra-

crued rights up to the date placed on that list. The least senior faculty member shall be the first name placed on the released list. He shall be retained on the preferred rehiring list for a period of two (2) years. Anything herein to the contrary notwithstanding, an employee on the preferred rehiring list shall not be entitled to any of the benefits provided by this agreement while on such list. *No new faculty members will be hired to fill a vacancy at the College for which a retrenched faculty member on the preferred rehiring list is qualified unless the vacancy first is offered in writing to last known address of all such faculty members* on that list, for recall in reverse order of placement thereon, for a period of thirty (30) days. In the event a faculty member rejects in writing an offered position in accordance with the foregoing or in the event he does not respond in writing within the said thirty-day period, his name shall be passed over, but he shall remain on the preferred rehiring list for a total period of two (2) years. *Part-time faculty members shall have recall rights only with respect to a part-time position,* but shall be considered for full-time positions in accordance with Article IX hereof, Appointments." (Emphasis supplied).

tionally derived from the agreement, neither can be said to be "against the law" within the meaning of Section 11(d) of the Arbitration Act. It follows that the Commonwealth Court erred in substituting its view of the proper construction of the agreement for the view of the arbitrator selected by the parties. *International Brotherhood of Firemen and Oilers, AFL–CIO Local 1201, supra.*

Since we find no meritorious ground for either modifying, correcting or vacating the arbitration award, the order of the Commonwealth Court is vacated and the petition for review of the award is denied.

JONES, former C. J., did not participate in the decision of this case.

NIX, J., did not participate in the consideration or decision of this case.

ROBERTS and MANDERINO, JJ., filed concurring opinions.

ROBERTS, Judge, concurring.

I concur in the result, believing it is in harmony with the principles expressed by this Court in *City of Washington v. Police Department,* 436 Pa. 168, 259 A.2d 437 (1969).

MANDERINO, Justice, concurring.

I join in Mr. Justice Pomeroy's opinion. Judicial review of arbitration awards does not depend on whether or not certain language in an act, or in a particular case, can be interpreted with different shades of meaning. The majority opinion points out that no conflict exists between the standard of review in the Arbitration Act of 1927 and that recognized by federal decisional law in the field of labor relations. Likewise, the majority properly notes that the Act of 1927 does not dictate a "different

scrutiny" of an arbitration award than required in the federal decisions.

The important point about judicial review of arbitration awards is that the arbitration is, except in limited situations, "the court of last resort." The arbitrator may make a mistake just as any court of last resort, including this one, may do. A mistake, however, is not a sufficient basis to take away the arbitrator's role as the court of last resort. Thus, if the arbitrator's award is derived from the agreement between the parties, it can not be upset by the courts, whether or not the arbitrator erred. To hold otherwise would frustrate the whole concept and purpose of binding arbitration.