## Harrisburg v. American Federation of State, County, and Municipal Employees

*Louis J. Adler*, for petitioner.
*Theodore M. Lieverman*, for respondents.

CALDWELL, J., October 11, 1979—Before us is a petition of the City of Harrisburg, filed by the members of city council acting in their representative and individual capacities. The city seeks to have the court review an award of a labor arbitrator, dated January 29, 1979. The arbitrator resolved an impasse in labor negotiations between the mayor of the city and the labor union representing certain non-uniformed employes of the City of Harrisburg (AFSCME). The nub of contention lies in the fact that the arbitrators' award specifically provides that "residency in the City of Harrisburg will not be required as a condition of employment . . ." City council contends that this portion of the award must be vacated because it conflicts with Ordinance 15-1976, enacted by council on September 28, 1976, which made residency in the city mandatory for all future city employes.[1]

The city's petition has been contested by AFSCME on several grounds. Initially AFSCME claims that city council lacks legal standing to chal-

1. We have previously considered other facets of Ordinance 15-1976. See, Capital City Lodge v. City of Harrisburg, 99 Dauph. 31 (1977), affirmed in 32 Pa. Commonwealth Ct. 85, 379 A. 2d 328 (1977).

lenge the award. If city council is found to be a proper body to challenge the award, it is then contended that the provisions of the Public Employe Relations Act of July 23, 1970, P.L. 563, 43 P.S. §1101.101 et seq. (PERA), under which the award was entered, take precedence over a purely local ordinance to the contrary, such as Ordinance 15-1976.

The issue of legal standing goes not to the heart of the matter under consideration, but is a technical point to be resolved before reaching the merits of a case. Legal standing refers to the requirement of the law that an action may be brought only by a person or entity enjoying the right to sue for the relief sought. Stated conversely, where a right to sue is lodged in only one entity, another entity may not maintain the cause of action. In this case city council and its members allege that as a "public employer" it has standing to appeal from the arbitrator's disposition of the labor dispute, in accordance with PERA. PERA defines in pertinent part a "Public Employer" as follows: "the Commonwealth of Pennsylvania, its political subdivisions including school districts and any officer, board, commission, agency, authority or other instrumentality thereof . . ." 43 P.S. §1101.301(1).

This definition is very broad and it necessarily does not attempt to distinguish between the various forms of municipal government provided for by the General Assembly.[2] It is our conclusion that the all

2. For example, Harrisburg is a third class city. Under the Optional Third Class City Charter Law of July 15, 1957, P.L. 901, 53 P.S. §41101 et seq., the city had the option of choosing between the "Mayor-Council Plan A" form of government and the "Council-Manager Plan." Each plan distributes power among the various branches of city government in a different fashion.

inclusive definition in PERA simply reflects the legislature's intent that municipalities, generally, recognize and bargain with representatives of their employes. The further issue, of who shall be the agent of the municipality for purposes of collective bargaining, must, in our opinion, be determined by reference to the individual locality's form or framework of government.

In the instant case, Harrisburg has adopted the "Mayor-Council Plan A" form of government for third class cities. Under this plan the mayor is given considerable responsibilities. He appoints the director of each city department, supervises the department's performance, and enjoys a voice in the hiring or removal of subordinate officers of the various departments of city government. City council, on the other hand, is not involved in the administration and handling of city business or its employes, and is relegated largely to a budgetary and legislative function. The Charter Law actually prohibits a member of city council from administrative participation in the day to day functioning of city government. While not provided for in direct language, we believe the scheme of the City Charter Law places employe relations within the mayor's domain, and excludes city council from either administration or control in said area. Furthermore, the mayor is charged with executing contracts and written obligations on behalf of the city: 53 P.S. §41413(c). Since a collective bargaining agreement is a contract (see Community College of Beaver County v. Society of the Faculty, 473 Pa. 576, 375 A. 2d 1267 (1977); Falsetti v. Local 2026, United Mine Workers, 400 Pa. 145, 161 A. 2d 882 (1960)), it follows logically that the mayor should be the appropriate representative of the city for collective

bargaining purposes, and the only agent of the city who may contest the arbitration award in the instant case.

In support of its argument that it should have standing to question the arbitrator's award, city council relies upon the case of In the Matter of Employees of the City of Pittsburgh, 4 PPER 108 (C.P. Allegheny Co. 1974). However, in our judgment this decision is not dispositive of the issue in the case at bar. In that case five union members were employed by the City of Pittsburgh to collect money from the city's parking meters. The mayor proposed in his 1972 budget that these employes receive a five per cent raise. City council, however, desired to eliminate these employes, and it provided funds in the budget for a new category of employe, designated as "truck driver parking meter collectors." The mayor exercised a line veto of this item, but his veto was overridden by council, thus eliminating the original positions.

The union, complaining of a refusal to bargain, filed an unfair practice charge against city council with the Pennsylvania Labor Relations Board. In finding in favor of city council the board concluded the PERA applies only to actions of a public employer acting through its executive branch. Since city council is the legislative branch of city government the board held that it had no duty to bargain and could not be guilty of an unfair labor practice.

The Court of Common Pleas of Allegheny County reversed the board's decision and said:

"The legislative mandate [PERA] makes it abundantly clear that it is the public employer, as a legal entity, that is charged with discharging the important obligations of the Act. . . .

"There is absolutely no basis for differentiating between executive and legislative action with respect to the public employer's obligation to bargain in good faith as to any mandatory subject of collective bargaining." Id. at 108-09 (brackets added). The court held that city council had a duty to bargain concerning elimination of the collectors' jobs and was subject to the act.

It does not follow from this holding, however, that the legislative arm of the municipality has the right to bargain directly with the public employe union, or to appeal in its own right from an arbitration proceeding in which the City, as a legal entity, was duly and properly represented by the mayor. The Employees of the City of Pittsburgh case suggests no specific procedure for city council to follow to fulfill its duty to bargain, nor did it have to, stating only that the council had a duty under the circumstances. We can conclude that the court in that case meant and understood the duty to bargain to mean bargaining through the appropriate agent of the city, the mayor. If the mayor is the appropriate bargaining official for the "public employer," as we believe he is, it follows that he is also the only party with standing to question the award of the arbitrator.

While our decision to dismiss the within petition rests on city council's lack of standing, we have nonetheless reviewed the positions of the parties to this proceeding concerning the residency dichotomy created by city council's enactment of Ordinance 15-1976 and the award of the arbitrator, and believe we should comment briefly upon it.

We conclude the union is correct in asserting that residency is a mandatory subject of collective bargaining under the provisions of PERA, and is a

subject that may not be foreclosed from negotiations by the action of city government. Residency ordinances are recognized as valid and enforceable enactments of local government. However, in this instance we find that the requirements of PERA, a state law, have the effect of subordinating a local residency ordinance to the right of organized employes to collective bargaining on this issue. Having arrived at this decision we conclude the city could not prevail on the merits of the dispute.

## ORDER

And now, October 11, 1979, the petition of the City of Harrisburg by its city council, and by the members of city council individually, is dismissed.