Commonwealth of Pennsylvania, Petitioner *v.* State Schools and Hospitals Federation of Teachers, Local 1830, Pennsylvania Federation of Teachers, AFT, AFL-CIO, by John D'Eletto, Trustee Ad Litem, Respondents.

Argued September 18, 1981, before Judges ROGERS, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*Kristen W. Brown,* Assistant Counsel, with her, *John D. Raup,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for petitioner.

*Sandra R. Kushner,* with her *Louis B. Kushner, Rothman, Gordon, Foreman, Groundine, P.A.,* for respondents.

OPINION BY JUDGE WILLIAMS, JR., January 21, 1982:

This case comes before the Court on an appeal by the Commonwealth of an award issued by an arbitrator sustaining grievances filed by members of the State Schools and Hospitals Federation of Teachers, Local 1830, Pennsylvania Federation of Teachers, AFT, AFL-CIO (union). The grievances contested furloughs of certain employees at six facilities for the mentally retarded and mentally ill, operated by the Department of Public Welfare (DPW), alleging that the method used violated past furlough practices and the collective bargaining agreement.

## I. BACKGROUND

In May, 1972, the federal district court for eastern Pennsylvania entered as a consent decree an agree-

ment of the parties terminating the action in *Pennsylvania Association for Retarded Children v. Commonwealth of Pennsylvania,* Civil Action No. 71-42 (E.D. Pa. 1971) (PARC), which resulted in a guarantee of free public education for mentally retarded school-age children. Pursuant to that order, the Department of Education (Education) and DPW jointly issued a document, dated October 24, 1973, entitled *General Guidelines for Transferring State School Education Programs to Intermediate Units (Guidelines).* Its prefatory language states that the *Guidelines* constitute an agreement between the two departments to the transfer of the affected education programs for school-age children from the jurisdiction of DPW to that of Education.[1]

At the time of the implementation of the *Guidelines,* no collective bargaining agreement between the Commonwealth and the union had been signed; the union did not even obtain certification as a bargaining unit from the Pennsylvania Labor Relations Board until April, 1973. It is apparent from the language of the preamble and the lengthy quasi-titular statement preceding it, that the *Guidelines,* a unilateral management personnel policy, were specifically developed to effectuate the transfer of functions, personnel, and jurisdiction of the education of school-age children between the departments. Indeed, Sec-

---

[1] The prefatory language reads as follows:

An agreement pertaining to the jurisdictional transfer of school-age education programs from state schools and hospitals to local intermediate units and the purchase of education and training for school-age residents in state schools and hospitals for the mentally retarded for the period September 1, 1973-June 30, 1974.

The secretaries of Public Welfare and Education hereby agree to the provisions of the transfer and contract as presented in the general guidelines.

tion 8.0 of the *Guidelines* makes clear that the instruction of "above-school-age" handicapped individuals would remain the responsibility of DPW.

The personnel policies published in the *Guidelines,* including the controversial provisions giving affected employes designated for transfer to an Intermediate Unit a choice of

OPTION I

4.1.1 Resigning and accepting a 10-month Intermediate Unit contract at a salary commensurate with his qualification and experience but no less than the gross DPW salary he would be making in the period beginning September 1, 1973, and ending June 30, 1974; or—

OPTION II

4.1.2 Making a 'paper' transfer to the program jurisdiction of the Intermediate Unit while remaining in his current DPW Civil Service classification, pay range, benefit package, retirement plan and 12-month employment status

are patently limited in scope to those employes who, because they work with school-age children, would be affected by the PARC consent order.

The bargaining unit, on the other hand, apparently consists of instructors of both school-age and non-school-age individuals. The record contains a memo from the Director of Labor Relations, Office of Budget and Administration, to the Executive Director of the Labor Relations Board, dated prior to the certification, in which the unit is described as *containing* "several classes of employees who have responsibility for the education and training of mentally retarded children." The memo additionally states that the "transfer of responsibility (from DPW to Education) will affect approximately 70% of the employes in the

proposed Instructional Non-Tenured unit.'' It would be possible to deduce from that information that the remaining 30% of the employes in the unit, not being affected by the proposed transfer, are instructors of non-school age individuals. However, the scope of appellate review does not encompass the tentative deduction of necessary facts from an incomplete record, since there may well be other reasons why 30% of the members would not be moved.

## II. Discussion

The Court perceives from the award of the arbitrator, which makes separate provision for the furlough of individuals working with school-age children and with adults, that employes within both divisions of the unit must be[2] among the grievants, who apparently all contend that they should have been given the Option choices, *supra*.

In upholding the grievances, the arbitrator found that certain language in the *Annual Leave* section of the collective bargaining agreement, relating to ''option 2 of the 'Procedures and Policies for Transferring State School Education Programs to Intermediate Units' '' *(Guidelines)*, incorporated into the bargaining agreement the entire aforesaid document. He inferentially made the provisions of the *Guidelines* in their entirety[3] applicable to all members of the bargaining unit. The Commonwealth has appealed that determination, alleging that the award of the

---

[2] We do not, because it is beyond our authority, find this as a fact, but merely state it to demonstrate one of the bases for our confusion.

[3] The furlough provisions found in the *Guidelines* and those found in the collective bargaining agreement conflict. Those in the *Guidelines* are more affirmatively oriented to the benefit of a furloughed employe.

arbitrator does not draw its essence from the collective bargaining agreement, and is not rationally derived therefrom, because it impermissibly adds to, subtracts from, or modifies the terms of the agreement.

Because much of the factual basis for the suit has not been made clear to this Court, we cannot make a rational determination that the arbitrator did, or did not exceed the scope of his authority[4] to derive his decision from the agreement. It is axiomatic that the arbitrator cannot so re-write the *Guidelines,* which predated the collective bargaining agreement, that he unilaterally broadens its clear language to include members of the bargaining unit who patently do not fall within its parameters. However, since neither this Court nor the arbitrator[5] knows whether any impermissible modification[6] has occurred, we hereby remand the case for the addition to the record of the evidence necessary to resolve specific questions concerning (1) whether the bargaining unit includes employes who function as instructors of mentally handicapped individuals other than school-age children, and (2) in which division of the bargaining unit each grievant can accurately be placed.

---

[4] *See Community College of Beaver County v. Community College of Beaver County, Society of Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977).

[5] "Exactly which of the grievants, if any, had been 'furloughed' due to a transfer of 'education and training of mentally retarded *adults* functions' and which, if any, had been furloughed due to a transfer of 'education of mentally retarded childrens functions' is not clear, on the evidence." Arbitrators' Opinion, page 33.

[6] The Court does note, however, that the incorporation of the *Guidelines* into the collective bargaining agreement would effectively erase the furlough provisions of the later agreement. This Court cannot accept the proposition that the parties bargained for totally useless and empty words.

ORDER

AND NOW, this 21st day of January, 1982, the decision of the arbitrator in Labor Arbitration Proceedings between the Commonwealth of Pennsylvania and the American Federation of Teachers/ Pennsylvania Federation of Teachers, Local 1830 AFT, AFL-CIO, issued February 19, 1981, is hereby vacated. The case is remanded to the referee for proceedings not inconsistent with this Opinion.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.