## City of Philadelphia, Office of Housing and Community Development v. AFSCME, Local Union 1971

*David Brier,* for plaintiff.
*Thomas W. Jennings,* for defendant.

O'KEEFE, *J.,* February 7, 1996—On June 30, 1995, Arbitrator James McMullen issued an arbitration award and opinion in favor of numerous grievant employees, which plaintiff Office of Housing and Community Development subsequently petitioned this court to vacate. On October 2, 1995, this court denied the OHCD's request and instead confirmed the arbitration award. The October 2 order also stated that "[a]n appeal of this order shall not act as a stay." On November 1, 1995, OHCD filed notice of appeal to the Commonwealth Court from the October 2 order. On November 17, 1995, OHCD filed with the court a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). OHCD's filed statement contended that: (1) the court erred in confirming an award which did not draw its essence from the collective bargaining agreement, and that (2) the court erred in ordering that an appeal would not act as a stay. This opinion addresses both of these issues.

In 1991, Mayor Rendell pledged to reform the public housing programs in Philadelphia. Mayor Rendell appointed a Task Force on Housing Initiatives (the "Brophy Commission"). The Brophy Commission issued a report in January 1993 proposing a sweeping reorganization

of Philadelphia's housing agencies. The reorganization included the transfer of many OHCD functions to the Redevelopment Authority of the City of Philadelphia. The underlying arbitration between OHCD and the American Federation of State County and Municipal Employees, Local 1971 arose from a set of grievances filed by Local 1971 on behalf of OHCD employees who were laid off when their office was "reorganized."

At the time of the layoffs, the collective bargaining agreement between OHCD and Local 1971 provided at article XX:

"LAYOFFS

"(A) *General*

"(2) The employer agrees that if layoffs occur . . . the following procedure will be followed:

"(a) Employees shall not be laid off in an arbitrary or capricious manner. . . .

"(c) All persons affected will be offered retraining opportunities commensurate with their abilities.

"(B) *Procedure*

"(1) The employer agrees that every effort shall be made to avoid layoffs or reduction in pay of employees. Such efforts to avoid layoffs or reduction in pay shall be OHCD-wide. Divisions and departments shall co-operate to avoid layoffs or reduction in pay. Vacancies shall be filled or created across division and department lines in order to avoid layoffs or reduction in pay.

"(2) All employees affected by layoffs shall be offered retraining opportunities commensurate with their abilities.

"(3) Layoffs may occur only if necessitated because of lack of funds or work or reorganization resulting in the abolition of a position, but not without consultation with the Union, and disputes shall be grievable.

"(4) In the event of layoffs, the employer agrees to discuss the matter with the Union sufficiently prior to the institution of layoffs so as to allow for the possible development of alternatives. The employer shall make every effort to establish comparability and to fill vacancies in any division and department to avoid actual layoffs."

In light of the agreement's requirements that "consultation with the Union" precede any layoff and that OHCD "make every effort" to avoid layoffs, Arbitrator James McMullen found that OHCD had violated the agreement because OHCD's efforts and consultations were, "at best, superficial and inadequate."[1] That finding was based on testimony given during the arbitration hearing. When asked what efforts were made to avoid the layoffs, John Kromer, OHCD personnel director, testified that, "the layoffs were not a matter of discussion."[2] Regarding the layoffs, Mr. Kromer also testified that the mayor had made it clear to him that "there was to be no discussion."[3]

Arbitrator McMullen also found that OHCD had violated the agreement's requirement that, "[a]ll employees affected by layoffs shall be offered retraining opportunities commensurate with their abilities." Testimony at the arbitration hearing revealed that the only training given to the laid-off employees was in resume preparation and employment interview skills. Arbitrator McMullen interpreted the agreement's "retraining" provision to require skills training. This was a reasonable interpretation given the agreement's wording that train-

---

1. Award at p. 29.
2. Award at p. 28.
3. Award at p. 28.

ing be given, "commensurate with [the employee's] abilities."

This court begins by reiterating the basic premise that where a public sector arbitration award is concerned, the scope of review is extremely narrow and circumscribed. Indeed, the well-settled law in this Commonwealth is that such an arbitration award will not be disturbed so long as it draws its essence from the collective bargaining agreement. *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981); *Ringgold Area School District v. Ringgold Education Association (PSEA/NEA),* 489 Pa. 380, 414 A.2d 118 (1980); *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 381 A.2d 849 (1977). This "essence test" mandates judicial deference if the arbitrator's interpretation of the collective bargaining agreement can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. *Leechburg Area School District v. Dale, supra; Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977).

Upon careful consideration of the OHCD's petition, Local 1971's response, and the parties' various exhibits thereto, it was the opinion of this court that Arbitrator McMullen's June 30, 1995 award drew its essence from the collective bargaining agreement. In short, the agreement was violated because "consultation with the Union" did not precede the layoffs, efforts were not made to avoid the layoffs, and the employees were not given training "commensurate with their abilities." The arbitrator's approach was an entirely rational, equitable, and reasonable interpretation of the relevant portions of the agreement.

OHCD's next argument, that it is entitled to an "automatic supersedeas" under Pa.R.A.P. 1736, makes clear that counsel for OHCD has not read the note to that rule. The note to 1736 states, "The 1987 amendment eliminates the automatic supersedeas for political subdivisions on appeals from the common pleas court where that court has affirmed an arbitration award in a grievance or similar proceeding." As OHCD brings this appeal from a court of common pleas confirmation of a grievance arbitration, OHCD has no right to an automatic supersedeas.[4]

As the June 30, 1995 arbitration award fully satisfied the "essence test," and OHCD is not entitled to an automatic supersedeas, this court properly denied OHCD's petition to vacate the award and instead confirmed the award stating that an appeal would not act as a stay.

---

4. It is important to note that if the court had granted a stay pending appeal, the laid-off employees could suffer great prejudice when their back pay and reinstatements were held in limbo during the appeal process.