**Luzerne Intermediate Unit No. 18 v. Luzerne Intermediate Unit Education Ass'n, PSEA/NEA**

C.P. of Luzerne County, no. 10848 of 2010.

*John G. Audi,* for plaintiff.
*Jeffrey Husisian,* for defendant.

VAN JURA, *J.,* December 29, 2010—Before this court is the petition of the Luzerne Intermediate Unit No. 18 ("LIU"), to vacate the award of the arbitrator, John M.

Skonier, Esquire, dated July 15, 2010, sustaining two grievances that were filed on behalf of two school nurses employed by the petitioner, Luzerne Intermediate Unit No. 18 (LIU), Kingston, Pa.

The facts, substantially as found by arbitrator, John M. Skonier, Esquire, are as follows: Grievants are employed by the LIU as school nurses. Ms. Donna Reino is the only school nurse assigned to work at the LIU's Learning Center, a building facility for "at risk" students who do not function properly in normal school settings. Ms. Reino's assigned student caseload is approximately 142 students. Ms. Geraldine Siracuse, is a nurse assigned to the Mattel Middle School, the REAL Academy, and Pittston Primary Center, and has an assigned student caseload of approximately 45 to 60 students. (Arbitration award, at 2-3, 7-8.)

Starting in October, 2008, the LIU instructed grievants, Reino and Siracuse, to "cover" the student caseloads of other nurses who were absent from work. Grievants, thus, were responsible for all of the needs of the other nurses' caseloads. Further, because the other nurses worked at different buildings, grievants were required to leave their primarily assigned work locations and travel to other buildings. There is no dispute, finally, that when the grievants left their own work assignments to cover for the assignments or duties of absent nurses, the LIU never provided a substitute nurse to cover the grievants' own student caseloads; nor did the LIU relieve the grievants of their own work assignments when the grievants left to tend to the other nurses' caseloads. Thus, when the grievants

were away and tending to the absent nurses' caseloads, no one else was covering the demands of grievants' own caseloads, and the grievants remained simultaneously responsible for their own assigned caseloads and, at the same time, for the absent nurses' caseloads. Grievants, in short, were "on call" for two work assignments: their own caseloads and the caseloads of the absent nurses. In this way, the grievants simultaneously performed their own duties and the duties of another employee. (Arbitration award, at 4-5, 7-8, 9-10.)

The two grievants had a system for monitoring and handling their own caseloads while they were away and tending to the other nurses' caseloads. Grievants "kept in touch" with their regularly assigned locations and were available via cell phone and could be reached, immediately and at any time, if an emergency or other situation occurred with their own student caseloads, while they were off their assigned site and simultaneously tending to the absent nurses' caseloads. When contacted under these circumstances, grievants were expected to handle the situation immediately and make nursing decisions. Grievants could not wait or "postpone" the matter until they had finished tending to the other absent nurses' caseloads and had returned to their own regular work location. Instead, the grievants needed to make nursing decisions while they were away from their own regularly assigned work locations. Depending on the circumstances, grievants would either return immediately to their own work locations to tend to the situation, or they would contact the student's parents, "911", or the school district nurse. (Arbitration award, at 7-8, 9-10.)

On the basis of these facts, arbitrator Skonier found that the grievants were entitled to compensatory time under the applicable collective bargaining agreement (CBA) between the petitioner, LIU, and the respondent, Luzerne Intermediate Unit Education Association PSEA/ NEA. Arbitrator Skonier noted that the language of the CBA (Article XVI Section J), awards compensatory time whenever an employee, "[i]n addition to performing their own duties/class assignments, is required to cover or teach a class or assume duties for a teacher who is absent." (Arbitration award, at 9.) Arbitrator Skonier emphasized the fact that the grievants were never relieved of their own regularly assigned responsibilities and student caseloads when they were off their regularly assigned site and covering for the absent nurses; and that the grievants were "always able to be immediately contacted by whatever facility needed their service." (Arbitration award, at 9-10.) Arbitrator Skonier concluded: "They [the grievants] were always responsible for their own students and, in addition, were responsible for the needs of the students of the absent nurses." (Arbitration award, at 10.)

Arbitrator Skonier concluded:

"The heading for the language at issue is "absorbing other employee assignments." The language reads, in per-tinent part, "[a]ny teacher, who in addition to performing their own duties/class assignments, is required to cover or teach a class or assume duties for a teacher who is absent...shall receive compensation time..." As previously stated, the parties agreed at the instant hearing that the language applies to all members

of the bargaining unit, not just teachers. It is unrebutted that both Grievants were told by their supervisors to provide coverage for the duties of an absent nurse. While it is obvious that they could not perform their own physical duties and those of the other nurse at the same time, they were always able to be immediately contacted by whatever facility needed their services and, more importantly, they were never relieved of their regularly assigned responsibilities. There were always responsible for their own students and, in addition, were responsible for the needs of the students of the absent nurses. As such, I find that they qualify for compensatory time for the time they spent per-forming the physical functions of the absent nurses for whom they were providing coverage.

As the LIU violated the collective bargaining agreement when it denied compensatory time to the Grievants, the grievance must be sustained..."

In reviewing the legal sufficiency of the arbitration award, the court turns initially to the precise contract language in question.

The applicable language of the CBA at issue states, in pertinent part:

Article XVI - PROFESSIONAL PERSONNEL PROVISIONS

J. Absorbing Other Employee Assignments

Any teacher, who in addition to performing their own duties/class assignments, is required to cover or teach

a class or assume duties for a teacher who is absent and when it is not possible, practical or feasible to provide a substitute teacher, shall receive compensation time, which when accumulated, will be taken in one-half (1/2) day or one (1) day(s) block(s) of time. The administration staff shall secure and maintain a list of volunteers who desire to assume this responsibility. However, in the event there are no volunteers available for covering the aforementioned assignments, the administrative staff shall then assign personnel to this responsibility. Every effort shall be made to rotate assigned personnel to this responsibility.

At the hearing, the parties stipulated that although the contract provision at issue references "teachers," the provision is applicable to all members of the bargaining unit and thus, applies to the nurse grievants.

In *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 595 Pa. 648, 659, 939 A.2d 855, 862 (2007), our Supreme Court reaffirmed the "Essence Test," as articulated in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA-NEA)*, 560 Pa. 135, 743 A.2d 405 (1999), as the appropriate standard to be employed by courts in reviewing arbitration awards arising under the Pennsylvania Public Employee Relations Act (PERA) such as the award in question.

The "Essence Test" is a two prong test. First, a court reviewing an arbitration award shall determine if the issue before the court, as properly defined, is within the terms of

the CBA and thus, properly before the arbitrator. Second, if the court finds that the issue is embraced by the CBA, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretations may be rationally derived from the CBA. "A court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the Collective Bargaining Agreement. *Westmoreland*, supra 939 A.2d at 863. (citations omitted)

The "Essence Test" requires great deference to the arbitrator's award. A court cannot review the merits of the dispute, cannot make its own independent factual findings, and cannot impose its own interpretation of the CBA or vacate the award, even if the court would have decided the case differently. The award must be respected by the judiciary if the interpretation of the CBA can, in any rational way, be derived from the CBA when viewed in light of its language, its context and any other indicia of the parties intention. *Community College of Beaver County v. Community College of Beaver County Society of Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977).

Our Supreme Court has made it clear that the reviewing court does not inquire into whether the arbitrator's decision is reasonable or even manifestly unreasonable; rather, the question is whether the award may, in any way, be rationally derived from the agreement between the parties. *State System of Higher Education v. State College University Professional Association (PSEA/NEA)*, 560 Pa. 135, 743 A.2d 405 (1999).

Thus, even if this court would have decided the

underlying issues differently than the arbitrator, that can be of no moment in a judicial review of this arbitrator's award.

Based on the narrow scope of review this court has in reviewing arbitration awards, upon the virtually undisputed facts of the case and the pertinent language of the CBA, this court is constrained to find that the issue, as properly defined, is within the terms of the CBA and that the arbitrator's decision can be reasonably construed to logically flow from the collective bargaining agreement and does trigger the compensatory time provision in Article XVI, Section J of the CBA.

It is unrebutted that each of the nurses/grievants was told by their supervisors to provide coverage for the duties of an absent nurse. While it is obvious that they could not perform their own physical duties and those of the absent nurses at the same time, it is also unrebutted that the nurses/grievants were never relieved of the duties of their regularly assigned caseloads. They were always able to be immediately contacted by whatever facility needed their services. They were always responsible for their own students, and in addition, were responsible for the needs of the students of the absent nurses.

As such, based upon a reading of the plain language of Article XVI, Section J, the issue of whether the nurses/grievants are entitled to compensatory time must be found to be embraced by the provisions of the collective bargaining agreement. *Danville Area Sch. Dist. v. Danville Area Education Association, PSEA/NEA,* 754 A.2d at 1258-1259 (2000). The CBA provides compensatory time to

bargaining unit employees who, in addition to performing their "own duties" also "assume duties" of another absent employee. The CBA plainly covers and contemplates this issue.

The second prong of the "Essence Test" is whether the award can be rationally derived from the CBA. See *Westmoreland,* supra, 939 A.2d at 863. Because the arbitrator's award can reasonably be construed to logically flow from the express contractual provisions of the CBA, this court must find that the second prong of the test is met. The LIU required the nurses/grievants to cover both their additionally assigned student caseloads at the same time as covering their own caseloads. That, under the CBA, triggers compensatory time. As such, this court finds that the arbitrator's award is rationally derived from the CBA.

With respect to three (3) specific arguments made by the respondent, LIU, the court notes as follows:

(1) The LIU argues that the award is contrary to the law in that it arguably limits the managerial prerogatives of the LIU pursuant to 43 P.S. Section 1101.702 of the Pennsylvania Public Employee Relations Act (PERA). In fact, correctly analyzed, the award does not serve to restrict managerial prerogatives. It simply recognizes that there can be compensatory time ramifications associated with the exercise of that managerial discretion, under certain circumstances as are set forth in the CBA.

(2) The LIU argues that the CBA does not award compensatory time unless an employee "doubles up"

and performs his/her duties and the duties of another employee simultaneously. The facts of record suggest that this is what occurred in this matter.

(3)  The LIU argues that the Grievants could not be in "two places at once." The CBA provision in question makes no reference to physical location or the on-site or off-site performance of duties or the physical location of that performance, but only to the performance of a second set of duties in the stead of an absent bargaining unit employee.

For the foregoing reasons, the court enters the attached order.

### ORDER

And now, December 29, 2010, it is hereby ordered and decreed that the petition to vacate arbitration award is herewith denied.

The prothonotary is directed to serve notice of the entry of this order pursuant to Pa.R.C.P. 236.