380 A.2d 1203

LEECHBURG AREA SCHOOL DISTRICT, Appellee,

v.

LEECHBURG EDUCATION ASSOCIATION, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 21, 1976.

Decided Dec. 1, 1977.

Rehearing Denied Jan. 6, 1978.

414

415

William K. Eckel, Johnstown, for appellant.

Donetta W. Ambrose, New Kensington, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

The issue in this appeal is whether the Commonwealth Court erred in reversing an arbitrator's award in a dispute

submitted to binding arbitration pursuant to a collective bargaining agreement.

The appellant, Leechburg Education Association (Association) is the exclusive bargaining agent for the professional employees of the Leechburg Area School District, and was duly selected under the provisions of the Public Employe Relations Act of 1970 (PERA), Act of July 23, 1970, P.L. 563 No. 195, art. I, § 101 *et seq.*, 43 P.S. §§ 1101.101–1101.2301 (Supp.1977–1978). The appellee, Leechburg Area School District (District) is a public employer in the Commonwealth of Pennsylvania.

The facts are not in dispute. Clara Battist and Margaret Smith were hired as teachers by the District for the 1974–75 school year. They agreed to accept the salaries which were offered by the District.

A grievance was later filed by the Association contending that the District violated the collective bargaining agreement in effect between the District and the Association in that the two teachers hired were not being paid the salary to which they were entitled. The dispute was submitted to binding arbitration according to the collective bargaining agreement in effect between the parties.

The arbitrator ruled in favor of the Association. An appeal was then taken to the Commonwealth Court by the District. The Commonwealth Court reversed the arbitrator's award. *Leechburg Area School District v. Leechburg Education Association*, 24 Pa.Cmwlth. 256, 355 A.2d 608 (1976). The Association's petition for allowance of appeal was granted by this Court, and this appeal followed. We vacate the order of the Commonwealth Court and affirm the arbitrator's award.

The scope of the court's review of a binding arbitration award under PERA is limited by the Act of April 25, 1927, P.L. 381 No. 248. *Community College of Beaver v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977).

■ Section 10 of the Act of 1927 outlines four situations in which a court may *vacate* an arbitration award. Section 11 of the Act of 1927 outlines four other situations in which a court may *modify or correct* an award. If a party seeks to vacate an award, it must allege one of the four conditions contained in section 10. If a party seeks to modify or correct an arbitration award, it must allege one of the conditions specified in section 11.

The appellee District in this case sought to vacate the arbitrator's award. It was therefore bound to seek judicial review under one of the four categories specified in section 10 of the Act.

The four situations covered in section 10 are:

"(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption on the part of the arbitrators, or any of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made."

■ The first issue raised by the District before the Commonwealth Court was a claim that the arbitrator had not properly interpreted the collective bargaining agreement between the parties. That contention is not one cognizable under section 10 as a basis for vacating an arbitrator's award.

■ The first category requires a claim that the award "was procured by corruption, fraud, or undue means." Appellee has never raised any such issue. The second category permits judicial review to determine whether there was "evident partiality or corruption on the part of the arbitrators." Appellee never raised that issue. The third category

permits judicial review if it is claimed that there was "misconduct" in certain respects or "misbehavior" prejudicing rights. Appellee never raised that issue. The fourth category allows judicial review if the arbitrators "exceeded their powers or so imperfectly executed them that a final and definite award . . . was not made." It is only this fourth category under which appellee's claims could conceivably fall.

Appellee, however, does not claim that the arbitrator "exceeded his powers." If we allowed a claim of improper interpretation of an agreement to fall under the category of "exceeded powers," binding arbitration would be a useless procedure. The determination of whether an arbitrator "exceeded proper powers" depends upon whether the arbitrator decided a dispute over which he had no jurisdiction, or granted an award which is prohibited by law.

The claim that a court should interpret an agreement differently than did the arbitrator would convert binding arbitration into "unbinding" arbitration. If binding arbitration has any meaning, the arbitrator must be considered the court of last resort except in the very limited categories specified in the Act of 1927. Where an arbitrator has jurisdiction, and where the arbitrator's award is not contrary to any legislative enactment, and where the arbitrator is not attacked as being corrupt, partial, or having engaged in misconduct or misbehavior, the award must stand.

For these reasons, we have not considered the provisions of the collective bargaining agreement before us. We have no jurisdiction to determine the question of whether the arbitrator mistakenly interpreted the agreement.

■ Appellee raises other issues which are properly reviewable under the Act of 1927. Appellee contends that the arbitrator's award is illegal because it is in direct conflict with Section 706 of PERA, 43 P.S. § 1101.706. Section 706 states:

"Nothing contained in this act shall impair the employer's right to hire employes or to discharge employes for just cause consistent with existing legislation."

Appellee appears to be arguing that this statute gives the District the exclusive right to "hire employees" on whatever salary terms the District and the individual employee agree to. Section 706, however, must be read in the context of other sections of PERA. PERA provides for the recognition of exclusive collective bargaining representatives. In this case, the Association is the exclusive bargaining agent for the teachers in the Leechburg Area School District. Accepting appellee's argument would destroy the authority of the Association as exclusive bargaining representative. Were appellee's view to prevail, a school district could effectively emasculate any salary scales contained in collective bargaining agreements by entering into individual agreements with each teacher. This is exactly the evil intended to be eliminated by the recognition of exclusive bargaining agents, agents who act for all employees the moment they are hired. As the United States Supreme Court recognized over thirty years ago, to allow individual contracts to interfere with the functioning of the collective bargaining agreement would reduce laws providing for collective bargaining to a futility. *J. I. Case Co. v. NLRB*, 321 U.S. 332, 337, 64 S.Ct. 576, 580, 88 L.Ed. 762, 767–68 (1944).

■ Appellee also points to section 1142 of the Public School Code of 1949, Act of May 10, 1949, P.L. 30, as amended, 24 P.S. § 1–101, *et seq.* Section 1142 in relevant part states:

"all school districts . . . shall pay all regular and temporary teachers . . . the minimum salaries and increments for the school year 1968–69 and each school year thereafter, as provided in the following tabulation in accordance with the column in which the professional employe is grouped and the step which the professional employe has attained by years of experience *within the school district* . . . When a school district, *by agreement,* places a professional employe on a step in the salary scale, each step thereafter shall constitute one year of service. . . . " (Emphasis added.)

According to the appellee, section 1142 authorizes a school district to agree with an individual teacher as to a salary scale and ignore the collective bargaining agreement. We reject such an interpretation. If the word "agreement" in section 1142 was interpreted to an agreement with an individual teacher rather than the collective bargaining agreement, section 1142 would completely emasculate PERA's recognition of exclusive bargaining representatives.

A collective bargaining agreement would eventually become ineffective if a district could, over a period of years, hire new teachers, without adhering to the wage salary scale in the collective bargaining agreement. After a period of time, the same evils would be present which brought about the need for PERA. Employees in a given district could all be paid wage levels totally unrelated to their background, qualifications, or experience, but related only to the particular personal or financial pressures of the employee or the employer at the time of hiring.

As in this case, the two teachers desiring employment were willing to accept a lower wage rather than lose the employment. After such teachers become a part of the system, the discrepancies in salary between them and others similarly situated over a period of time is a cause for unrest.

We have examined section 10 of the Arbitration Act of 1927, and not section 11, because the appellee is asking that an arbitrator's award be *vacated*. We note, however, that the issue raised by the appellee would not be cognizable under section 11 either. The first part of section 11 requires some miscalculation. None has been alleged in this case. The second part of section 11 deals with the situation where the arbitrators have decided a matter not submitted to them. No such claim is made in this case. The third part of section 11 deals with the claim that the award is imperfect in form. No such claim has been made in this case. The fourth part of section 11 involves a claim that "the award is against the law." As indicated earlier, however, we are unable to conclude that the arbitrator's award in this case was prohibited by any legislative enactment.

Accordingly, the order of the Commonwealth Court is vacated and the award of the arbitrator is affirmed

POMEROY and ROBERTS, JJ., filed concurring opinions.

EAGEN, C. J., concurred in the result.

JONES, former C. J., did not participate in the decision of this case.

NIX, J., did not participate in the consideration or decision of this case.

ROBERTS, Justice, concurring.

I agree with the majority that the award of the arbitrator should be affirmed. I do not believe, however, that the Arbitration Act of 1927, Act of April 25, 1927, P.L. 381, §§ 1 et seq., 5 P.S. §§ 161–181 (1963), is controlling.

The Legislature, in enacting the Public Employe Relations Act of 1970, P.L. 563, §§ 101 et seq., 43 P.S. §§ 1101.101–1101.2301 (Supp.1977) [Act 195], established a self-contained system for the resolution of disputes in the public sector through arbitration. Act 195 contemplates an arbitration scheme which is different from the Arbitration Act of 1927: Act 195 prescribes its own method for the selection of arbitrators which is different from the Arbitration Act of 1927; Act 195 allows the parties to bargain over the procedures to be followed while the Arbitration Act of 1927 specifies those procedures. These differences convince me that the Legislature did not intend the Arbitration Act of 1927 to apply.*

While I do not believe that the Arbitration Act of 1927 applies, I agree with the conclusion of the majority in *Community College of Beaver v. Community College of*

---

* The arbitration scheme set forth in Act 195 is similar to the one found in the Act of June 24, 1968, P.L. 237, §§ 1 et seq., 43 P.S. §§ 217.1–217.10 (Supp.1977) [Act 111]. We considered this arbitration scheme in *City of Washington v. Police Department*, 436 Pa. 168, 259 A.2d 437 (1969), and concluded that the court reviewing the award of the arbitrator should ask whether the arbitrator acted in excess of his power as authorized by the collective bargaining agreement.

*Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977), that the award of the arbitrator is to be affirmed if it "draws its essence from the collective bargaining agreement." *Community College of Beaver v. Community College of Beaver County, Society of Faculty (PSEA/NEA),* supra, 473 Pa. at 586, 375 A.2d at 1272 (1977), quoting *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

I believe that the Commonwealth Court incorrectly decided the question whether the award of the arbitrator here drew its essence from the agreement. "It is the arbitrator's construction which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. at 599, 80 S.Ct. at 1362. Accordingly, I concur in the result.

POMEROY, Justice, concurring.

In *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977) (hereafter *Beaver County*), this Court held that the Arbitration Act of 1927[1] (hereafter "Arbitration Act" or "Act of 1927") had not been impliedly repealed by the Public Employe Relations Act of 1970[2] ("PERA"), and that both statutes applied to public employee arbitration matters.[3] In the same case we approved the "essence" test of the *Steelworkers Trilogy*[4] as the proper

1. Act of April 25, 1927, P.L. 381, No. 248, 5 P.S. § 1 *et seq., as amended,* 5 P.S. § 161 *et seq.* (1963).

2. Act of July 23, 1970, P.L. 563, No. 195, Art. I, § 101 *et seq.,* 43 P.S. §§ 1101.101–1101.2301 (Supp.1977–78).

3. To the extent that there were any inconsistencies between the two, we stated that PERA, as the later enactment, should prevail. 473 Pa. at 594, 375 A.2d at 1276.

4. *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf*

approach to be followed in Pennsylvania in the interpretation of collective bargaining agreements. We further held that an arbitrator, when interpreting such an agreement, is engaged in a fact-finding process and that his interpretation will not be set aside under Section 11(d) of the Arbitration Act so long as it derives its "essence" from the agreement.

In its opinion today, for no apparent reason and without vouchsafing an explanation, the Court departs from the *Beaver County* rationale. It holds, after misreading the Arbitration Act, that a court is *without jurisdiction* to review an arbitrator's interpretation. This is at odds with the recent holding in *Beaver County*, and while the result reached by the Court is correct in this case, I cannot join in its opinion.

## I.

The parties to this appeal are also parties to a collective bargaining agreement covering the employment of teachers in the appellee school district. The agreement provides: "The criteria to determine a temporary professional or professional employee's salary shall be the individual's years of teaching experience and his proper categorization as determined by his credentials." At issue is whether the parties intended "years of teaching experience" to refer to total years of experience or only to years of experience within the school district. The arbitrator found that the parties intended the former interpretation and not the latter. Since the arbitrator's finding, which stands on the same footing as a jury's resolution of a question of fact, is one that can be rationally derived from the agreement, the award should be sustained. *Beaver County, supra,* 473 Pa. at 592, 375 A.2d at 1274–75.[5] I therefore agree with the result reached by the

*Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

5. The interpretation which the arbitrator made cannot be said to be "against the law" within the meaning of Section 11(d) of the Arbitration Act and does not render the collective bargaining agreement "in

majority, *viz.,* that the Commonwealth Court erred in reversing the arbitrator's award.

## II.

The foregoing should be all that is required to decide this case as the Court does decide it. The opinion of the Court, however, goes further and engages in what, in my view, is a faulty analysis of the Act of 1927, *supra* note 1. The opinion states that because the school district is seeking a vacation of the arbitrator's award, a court must confine its scope of review to the ground stated in Section 10 of the Arbitration Act, *see* note 1, *supra,* which section deals with the vacation of arbitrators' awards.[6] This analysis ignores the rationale

violation of, or inconsistent with, or in conflict with any statute" within the meaning of Section 703 of PERA. The majority adequately disposes of the school district's contention under Section 706 of PERA, 43 P.S. § 1101.706. I would add that I see no fatal inconsistency between the agreement, negotiated under PERA, and the legislative policy expressed in Section 1142(a) of the 1949 Public School Code, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1142(a) (Supp.1977).

Section 1142(a) provides in part:
"[A]ll school districts . . . shall pay all regular . . . teachers . . . the *minimum* salaries and increments . . . as provided in the following tabulation in accordance with . . . the step which the professional employe has attained *by years of experience within the school district* . . . ." (Emphasis added.)

This, in my view, presents no problem, for by the use of the word "minimum" the legislature obviously meant to set forth in Section 1142 a floor and not a ceiling on teacher pay and its calculation. An agreement to include all years of experience, whenever received, in calculating salary does not run against the legislature's minimum requirements.

Section 1142(a) of the School Code also provides in part: "When a school district, *by agreement,* places a professional employe on a step in a salary scale, each step thereafter shall constitute one year of service. . . . " (Emphasis added.) The school district argues that by virtue of this provision, the school board must remain free to negotiate individual salary calculations with teachers at the hiring stage. But if a school district chooses to enter into a collective bargaining agreement that includes newly-hired teachers, I see no fundamental inconsistency with any established legislative policy.

6. Although it is true that the relief desired by the school district in this case is much like the vacation of an award, there is no basis in the briefs or record for the majority's statement that the district

of our recent decision in *Beaver County, supra*, while purporting to apply it; the Court gives inordinate attention to the single word "vacate."

A reading of Section 10 of the Arbitration Act should make it apparent that the language of subsection (d) thereof, which authorizes the vacation of an award "[w]here the arbitrators exceeded their powers or so imperfectly executed them that a final and definite award upon the subject matter was not made," refers to cases in which the arbitrators have no authority, by terms of the agreement under which they operate, to hear the dispute or to cases in which the arbitrators failed to enter a decision that resolved the merits of the controversy. This interpretation is consistent with the other grounds for vacation mentioned in Section 10, *viz.*, fraud, corruption, or procedural abuses. *See, e. g., Majcher v. Brodner*, 22 Pa.D. & C.2d 218, 220 (C.P. Allegheny), *aff'd on opinion below*, 401 Pa. 500, 165 A.2d 251 (1960). I have found no authority for the majority's assertion that Section 10(d) offers a ground for judicial review if an arbitrator has "granted an award which is prohibited by law." Opinion of the Court, *ante* at 418. That ground is to be found, rather, in Section 11(d) of the Arbitration Act.

Perhaps, as a matter of draftsmanship, the General Assembly would have done better, when it added the "n. o. v." standard of review to the text of the Model State Arbitration Act of 1926 and enacted the model act as our Arbitration Act of 1927, to have placed that standard in Section 10

"sought to vacate the arbitrator's award." Opinion of the Court *ante* at 417. The school district, finding itself aggrieved by the arbitrator's award in this case, brought a petition for review in the Commonwealth Court under Pa.R.J.A. 2101, which was then in effect. (Review would now be had in the court of common pleas pursuant to Pa.R.Civ.P. 247 (effective July 1, 1976). *See Beaver County, supra*, 473 Pa. at 581–85, 375 A.2d at 1269–71.) The Commonwealth Court, without stating any statutory standard, sustained the "appeal" and "reversed" the arbitrator. We allowed an appeal to this Court. The school district, of course, now simply asks us to affirm the Commonwealth Court, and its brief does not even mention the Arbitration Act, much less rely on any specific section of that statute. This is understandable, since this case was briefed and argued before our decision in *Beaver County, supra*, which held that the Act of 1927 did apply to arbitrations conducted pursuant to PERA, *supra* note 2.

rather than in Section 11, where it is found as subsection (d).[7] But I cannot see why the placement of this provision in the statute should be controlling, as the majority does, with respect to the scope of judicial review. Certainly "modifying or correcting the award" pursuant to Section 11 fairly includes a judicial determination under Section 11(d)'s "n. o. v." test, as that test is explained and informed by the "essence test" of the *Steelworkers Trilogy, supra* note 4, that an arbitrator's award is wrong as a matter of law. But such a determination will not be made merely because a court disagrees with the interpretation of the arbitrator. Thus we held in *Beaver County:*

> "[W]here a task of an arbitrator, [under] PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . . .' *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969)." 473 Pa. at 593–94, 375 A.2d at 1275.

When one compares this holding with the majority's assertion that "[w]e have no jurisdiction to determine the question of whether the arbitrator mistakenly interpreted the agreement," Opinion of the Court *ante* at 1205, it should be obvious that the majority has chosen to overlook both the Arbitration Act and the approach which this Court adopted in *Beaver County* only a few months ago. Jurisdiction we surely have; the only question is how it should be exercised. Compare *County of Allegheny v. Allegheny County Prison*

---

7. Section 11(d) provides:

"[T]he court shall make an order modifying or correcting the award upon the application of any party to the arbitration:

\* \* \* \* \* \* \* \* \* \*

"(d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict."

*Employees Independent Union,* —— Pa. ——, ——, 381 A.2d 849 (1977).

Since I am satisfied, however, that the *Beaver County* approach requires a reinstatement of the award made by the arbitrator in this case, I concur in the order of reversal.