Mary Louise Dale, Catherine Pastva, Karen Ravotta and the Leechburg Education Association, Appellants *v.* Leechburg Area School District, Appellee.

Argued October 30, 1978, before Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three.

*William K. Eckel,* for appellants.

*Donetta W. Ambrose,* with her *Ambrose & Ambrose,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., April 30, 1979:

Before us is the issue whether a court of common pleas properly reversed an arbitration award which sustained grievances filed by the Leechburg Education Association (LEA)[1] against the Leechburg Area School District (District), a public employer, on behalf of three teachers: Mary Louise Dale, a tenured professional employee, and Catherine Pastva and Karen Ravotta, both temporary professional employees. We answer in the affirmative.

The essential facts are undisputed. On June 30, 1976, the Leechburg Area School Board resolved to reduce its staff effective immediately because of a substantial decrease in student enrollment and suspended several employees including grievants Dale, Pastva and Ravotta.[2] The School Board rehired the individual grievants on August 11, 1976, as substitutes for three teachers on authorized leave during the 1976-77 school year, at the rate of $33.33 per day, providing no fringe benefits.[3]

Following three working weeks, they filed grievances alleging that District had violated provisions of

---

[1] LEA was selected to be the exclusive bargaining agent for all professional employees within the Leechburg Area School District in accordance with the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§1101.101-1101.2301.

[2] *See* Sections 1124 and 1125 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§11-1124, 11-1125.

[3] The minimum salary applicable to substitute teachers and provided by the schedule in Section 11-1142 of the Public School Code, 24 P.S. §11-1142, is $6,000.00 per year which approximates $33.33 per day on the basis of a 180-day school year calendar.

the collective bargaining agreement by denying them their proper salary placement and benefits after their reassignment. LEA requested that the three grievants be put on the District's salary schedule in accordance with their respective years of service and degrees and sought compensation for the difference between the salaries they received as substitutes and that which they would have received as full-time regularly employed teachers.

The District denied their grievances and the controversy was submitted to arbitration in accordance with the collective bargaining agreement. The arbitrator characterized the three grievants as "long-term substitutes" who were the functional equivalent of full-time teachers and sustained the grievances as to all three grievants.

On appeal, the court below reversed the award of additional salary above the agreed-upon rate of $33.33 per day as against all three grievants and vacated the award of fringe benefits to the two non-tenured grievants.[4]

Our threshold inquiry is as to the applicable scope of review. While there appears to be some debate among the Justices of our Supreme Court whether the Arbitration Act of 1927[5] or the so-called "essence test" formulated by federal decisional law in the field of

---

[4] The court below affirmed the arbitrator's award of entitlement of the tenured grievant Dale to all "fringe benefits" granted to regular professional employees during the 1976-77 school year. The District does not contest this finding.

[5] Justice MANDERINO, in his plurality opinion in *Leechburg Area School District v. Leechburg Education Association*, 475 Pa. 413, 380 A.2d 1203 (1977), applied the Arbitration Act of April 25, 1927, P.L. 381, *as amended*, 5 P.S. §161 et seq., to the petition for review of an arbitration award without any mention of the "essence test" applied by the majority of the Court in an earlier opinion, *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977).

labor relations[6] dictates the standards governing judicial review of arbitration awards, our Supreme Court has also written that "[t]he two are not significantly different." *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 587, 375 A.2d 1267, 1272 (1977).

An award is within the arbitrator's powers and will be sustained "so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960). As *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969), explains:

> a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award. (Footnote omitted.)

A claim that an arbitrator has improperly interpreted the contract is not cognizable on appeal. *Leechburg, supra.* The arbitrator's interpretation of the parties' intention is the resolution of a question of fact and a reviewing court is not free to substitute its own interpretation where the arbitrator has a rational basis in the agreement. *Community College of Beaver County, supra.*

---

[6] In *Community College of Beaver County, supra,* 473 Pa. at 591, 375 A.2d at 1274, the majority of our Supreme Court termed the Commonwealth Court's adoption of the federal "essence" standard "a sound standard" of review compatible with the Arbitration Act of 1927.

In the instant case, the collective bargaining agreement makes no explicit mention or provision for "long-term" vis-a-vis "casual or per diem" substitutes but merely provides for the maintenance and use of a "substitute list."

Article XIV of the agreement provides in pertinent part:

All provisions of this contract shall be construed in accordance with the Pennsylvania School Code in effect on the particular date such interpretation of this contract is required.

The Public School Code's definition of "substitute" is found in Article XI of the Code, Section 11-1101:

(2) The term 'substitute' shall mean any individual who has been employed to perform the duties of a regular professional employe during such period as the regular professional employe is *absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors* or to perform the duties of a temporary professional employe who is absent. (Emphasis added.)

Thus, the express terms of the collective bargaining agreement incorporate a definition of "substitute" which does not differentiate between substitutes hired on a per diem basis and those hired for a more extended period of time to perform the duties of teachers on authorized leave. The express incorporation of the Public School Code provisions as an aid to construction which, *inter alia,* define "substitute" and set the minimum wage for payment binds the arbitrator who, according to Article III of the collective bargaining agreement:

shall have no power of authority to add to, subtract from or modify the provisions of this agreement in arriving at a decision of the issue presented and shall confine his decision solely

to the application and interpretation of this agreement.

After reviewing the agreement, we must conclude that the arbitrator's actions constitute more than mere application and interpretation of the collective bargaining agreement. The arbitrator has engaged in conduct proscribed by Article III by ignoring the incorporated Public School Code provisions, creating a "long-term" classification of substitutes and adding special provisions for payment, consonant with his own notions of fairness.

Accordingly, we

ORDER

AND Now, this 30th day of April, 1979, the order of the Court of Common Pleas of Armstrong County in the above captioned matter dated October 19, 1977, is hereby affirmed.

Judge CRAIG dissents.