Neshaminy School Service Personnel Association, Appellant *v.* Neshaminy School District, Appellee.

Argued April 10, 1980, before President Judge CRUMLISH, JR. and Judges BLATT and WILLIAMS, JR., sitting as a panel of three.

*Deborah R. Willig*, with her *Richard Kirschner, Markowitz & Kirschner*, for appellant.

*Miriam Reimel*, for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, July 28, 1980:

The Neshaminy School Service Personnel Association, exclusive bargaining agent for a unit of service personnel employed by the Neshaminy School District, appeals a Bucks County Common Pleas Court decision setting aside an arbitration award[1] based upon a grievance filed by George Pearce.[2] We affirm.

---

[1] The award is made in accordance with Section 903 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.903, which provides mandatory arbitration of disputes or grievances arising out of the interpretation of a collective bargaining agreement's provisions.

[2] The present matter stems from a grievance filed by George Pearce on July 15, 1976, stating:

> I have not been appointed to a position for which I was qualified, without just cause. Following the posting of the vacancy for which I had applied, the employer failed to interview me, changed the title of the position, and otherwise created conditions resulting in impairments to opportunities to avail myself of advantages contained in the collective bargaining agreement currently in effect.

Pearce, a helper in the District's Buildings and Grounds Maintenance Department, sought a job being vacated by a retiree in the Purchasing Department. The job was posted for bidding purposes as "temporary" on May 17, 1976 and as "permanent" on June 14, 1976, in conformity with the collective bargaining agreement. Although Pearce properly bid upon the first posting, the District was faced with a major budgetary crisis and scheduled no interviews. The vacancy was again posted on June 23, 1976 for a "Shipper-Receiver (Driver)." On June 30, 1976, the School Board eliminated both the retiree's former Shipper-Receiver job and a non-bargaining foreman's job in the Purchasing Department. However, the job was filled by the non-bargaining occupant of the eliminated Purchasing Department foreman job. Pearce's grievance, unresolved to his satisfaction at the District level, was submitted to arbitration under the collective bargaining agreement.

After hearing evidence and arguments, the Arbitrator denied Pearce's request for promotion:[3]

> Plainly, the elimination of the Shipper-Receiver (Driver) job was an action of the District with adequate justification, considering its financial problems. The 'advantage' of a possible promotion to the Leader's job was also properly denied the grievant since the District had authority under the contract to select the

---

[3] The arbitrator's decision refers to several sections of the collective bargaining agreement:

9-5 [9-6]   Position Postings — Transfers

9-5.1 [9-6.2]   The position will be filled with the best qualified candidate in the judgment of the District.

9-8 [9-11]   Working Conditions (General)   An employee will not be disciplined, reprimanded, reduced in rank, or denied compensation or advantage provided for in this Agreement without just cause.

*'best qualified' bidder in its judgment.* [section 9-5.2] Quite plainly, it would require something more *specific* than a generally worded clause such as 9-11 [9-8] to overcome the strong rights of management regarding job selection.... (Emphasis and explanation added.)

but determined that the use of a non-bargaining Manpower person in the new leader position "deprived the bargaining unit of driving responsibilities which would have been available to the bargaining unit had this person not been used," having the effect of "depriving Pearce of 'compensation or advantage' as referred to in Section 9-11 [9-8]" for those Shipper-Receiver (Driver) duties formerly held by the bargaining unit retiree:

The relief granted here may be temporary—lasting only until the added driving duties performed by the Manpower person are transferred to a member of the bargaining unit; but I believe that the relief should, under Section 9-11 [9-8], take the form of a financial payment to Pearce in the amount of 10 cents per hour added pay, this being the differential between the Helper job and the Shipper-Receiver job.

The Bucks County Common Pleas Court, by Judge John Justus Bodley, concluded that the arbitrator's award could not be rationally derived from or supported by the cited provisions of the collective bargaining agreement. The Court found nothing in the agreement, express or implied, to suggest that the District had wronged either Pearce or the bargaining unit by employing a Manpower person and assigning such duties as it chose.

We need only determine whether the Common Pleas court exceeded its authority in setting aside the arbitrator's financial award to Pearce as not being sup-

ported by or drawing its essence from the provisions of the collective bargaining agreement.

It did not.

Our review of arbitration awards made under the Public Employe Relations Act (PERA) collective bargaining agreements between public employers and employees is governed by Sections 10 and 11 of the Arbitration Act of 1927,[4] but equivalent to the "essence test" utilized by a long line of federal cases.[5] *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977); *City of Lebanon v. District Council 89, AFL-CIO*, 36 Pa. Commonwealth Ct. 442, 388 A.2d 1116 (1978). The essence standard was accurately stated in the often-cited case, *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3rd Cir. 1969):

> a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

---

[4] Act of April 25, 1927, P.L. 381, *as amended*, 5 P.S. §170.171. *See* note 6, *infra*.

[5] Our cases have often cited the landmark "Steelworkers Trilogy": *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). *See also Falstaff Brewing Corp. v. Local No. 153, Int'l Bhd. of Teamsters*, 479 F. Supp. 850 (D.C.N.J. 1978), *aff'd* 609 F.2d 501 (3d Cir. 1979).

*School District of Pittsburgh v. Local Union 297, Pittsburgh Area School Employees, AFSCME, AFL-CIO,* 46 Pa. Commonwealth Ct. 192, 407 A.2d 67 (1979); *see also Dauphin County Technical School Education Association v. Dauphin County Area Vocational-Technical School Board,* 483 Pa. 604, 398 A.2d 168 (1978).

While there exists a score of cases which serve to sanctify an arbitrator's award,[6] each is clearly based upon a reasonable interpretation of or a rational derivation from their respective collective bargaining agreement provisions,[7] and not upon the arbitrator's

———

[6] However, our Supreme Court has even gone so far as to sidestep the "essence test" to uphold an arbitration award. In *Leechburg Area School District v. Leechburg Education Association,* 475 Pa. 413, 380 A.2d 1203 (1978), *rev'g* 24 Pa. Commonwealth Ct. 256, 355 A.2d 608 (1976), the Court held the arbitrator had exceeded his powers within the Arbitration Act's Section 10 standard for vacating an award:

> The claim that a court should interpret an agreement differently than did the arbitrator would convert binding arbitration into 'unbinding' arbitration. If binding arbitration has any meaning, the arbitrator must be considered the court of last resort except in the very limited categories specified in the Act of 1927. Where an arbitrator has jurisdiction, and where the arbitrator's award is not contrary to any legislative enactment and where the arbitrator is not attacked as being corrupt, partial or having engaged in misconduct or misbehavior, the award must stand.

475 Pa. at 418, 380 A.2d at 1205.

We have confronted this problem before in *Dale v. Leechburg Area School District,* 42 Pa. Commonwealth Ct. 339, 341-42, 401 A.2d 582, 583-84 (1979), and found that the standards pose essentially the same question, regardless of whether the request is to modify (Section 11, 43 P.S. §171) or vacate (Section 10, 43 P.S. §170) the arbitrator's award.

[7] *See Ringgold Area School District v. Ringgold Area Education Association,* Pa. , 414 A.2d 118 (1980), *rev'g Arbitration of Ringgold Schools,* 24 Pa. Commonwealth Ct. 266, 356 A.2d 842 (1976) (parties mutually agreed upon oral modification during

own sense of justice. He clearly possessed the authority to fashion remedies necessary to further the intended "essence" of the bargaining agreement, *United Transportation, Local 1594 v. Southeastern Pennsylvania Transportation Authority*, 28 Pa. Commonwealth Ct. 323, 368 A.2d 834 (1977), but the decision is by no means unassailable.

In *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 381 A.2d 849 (1978), *aff'g* 20 Pa. Commonwealth Ct. 173, 341 A.2d 578 (1975), an arbitrator's award, based upon past practices which provided security for prison guards at lunchtime and allowed the selection of any available food in the prison kitchen, was held not implicitly incorporated into the collective bargaining agreement:

---

the agreement of an unwritten past practice); *Community College of Beaver County, supra, rev'g* 17 Pa. Commonwealth Ct. 231, 331 A.2d 921 (1975) (application of full-time retrenched seniority standards for rehiring purposes to newly created part-time jobs); *International Brotherhood of Firemen and Oilers, AFL-CIO Local 1201 v. School District of Philadelphia*, 465 Pa. 356, 350 A.2d 804 (1976) (construction of basic contract terms); *Forest Hills School District v. Forest Hills Education Association*, 45 Pa. Commonwealth Ct. 633, 405 A.2d 1346 (1979) (agreement's use of "unexcused absences" did not include strike days); *Commonwealth of Pennsylvania v. Council 13, American Federation of State, County and Municipal Employees, AFL-CIO*, 43 Pa. Commonwealth Ct. 177, 401 A.2d 1248 (1979) (interest payable on delayed compensation in light of the circumstances surrounding negotiations impasse); *Shippensburg Area Education Association v. Shippensburg Area School District*, 42 Pa. Commonwealth Ct. 128, 400 A.2d 1331 (1979) (bargaining agreement consistent with past practices providing equal yearly salary increases for both part and full-time teachers); *County of Lackawanna v. Service Employees' International Union, AFL-CIO*, 35 Pa. Commonwealth Ct. 531, 387 A.2d 161 (1978) (provision concerning employee seniority for layoff priority).

> The able arbitrator in this case ... was not so much interpreting the contract before him as he was declaring, no doubt out of his conviction of what was fair and reasonable, that the employer should be bound by a non-existent provision which the arbitrator then incorporates into the contract by implication.

476 Pa. at 38, 381 A.2d at 855.

Further, we have held that where an arbitrator's actions constitute more than a mere application and interpretation of the collective bargaining agreement's intentions and provisions, the decision cannot stand. In *Dale v. Leechburg Area School District,* 42 Pa. Commonwealth Ct. 339, 401 A.2d 582 (1979), the collective bargaining agreement expressly bound the arbitrator to the Pennsylvania School Code's definition of "substitute" for salary and benefits purposes, and thus prevented his use of personal principles of jurisprudence. Though factually distinguishable, these cases serve to protect that which is the foundation of this controversy — the collective bargaining agreement.

After carefully reviewing the arbitrator's opinion, in light of the collective bargaining agreement, we conclude that the lower court properly set aside the award. We seek not to attack the arbitrator's contractual interpretation and construction but merely point out that the award is not drawn from the essence of either Section 9-8 or the collective bargaining agreement. Obviously, a bargaining agreement cannot anticipate all contingencies, however, something more is needed to allow a financial award based upon the District's failure to select a bargaining unit participant for the vacant position. To hold otherwise would bind the District to a non-existent provision providing in essence that all bargaining applicants are "denied compensation and advantage" when an employment opening is filled by any non-bargaining person. An ar-

bitrator's discretion extends no further than mere application and interpretation and must stop when the decision proposes new contract provisions supported by personal notions of industrial justice and fairness.

Accordingly, we

ORDER

Now, July 28, 1980, we affirm the order of the Court of Common Pleas of Bucks County, dated March 12, 1979.

