## Harborcreek School District v. Harborcreek Education Association

*Wallace J. Knox*, for Harborcreek School District.
*George Levin*, for Harborcreek Education Association.

CARNEY, *P.J.*, October 29, 1980—This is a petition for review of an arbitrator's award in a dispute between a governmental agency, Harborcreek School District (hereinafter district) and the bargaining representative of the employees of the agency. Our jurisdiction exists pursuant to Section 933(b) of the Judicial Code, 42 Pa.C.S.A. §933(b).

The arbitrator's award of June 11, 1980 upheld the grievance of Paul M. Foust and directed the district to advance Mr. Foust on the salary scale and reimburse him for his salary loss from September 7, 1978. The evidence before the arbitrator established that Mr. Foust, a social studies teacher, has been a professional employee of the district since 1958. From 1950 until 1954 he served in the armed forces of the United States. In 1978, Mr. Foust completed the purchase of additional years of credit from the Pennsylvania Public School Employee's Retirement Board, in order to receive retirement credit for his military service.[1] By letter of August 7, 1978, Mr. Foust requested the district to advance him to step 25 of the salary scale in consideration of purchasing 4.08 years of military service from the Retirement Board. The district denied the request resulting in the grievance producing this arbitration award.

---

1. Mr. Foust purchased these years of previous creditable service pursuant to Section 8304 of the Retirement Code, 24 Pa.C.S.A. 8304.

Additional evidence before the arbitrator established that other teachers who had purchased additional years of retirement credit based on military service were advanced a corresponding number of steps on the salary scale. One teacher was advanced one and one half steps in 1971 for purchasing 1.7 years of retirement credit. Another was advanced 2 steps in 1971 for purchasing 1.89 years of retirement credit. A third teacher with 22 years of service was advanced five steps in 1971 after purchasing 3.2 years of credit. A fourth employee with 23 years of teaching was advanced two steps on the salary scale after purchasing 3.11 years of credit. The testimony established that Mr. Fourst was aware of these instances when he purchased his years of retirement credit.

On these previous occasions when teachers were advanced on the salary scale after purchasing years of retirement credit, the then superintendent made the step advancement in preparing the teacher's individual contract. This contract was then executed by the President of the District Board of Directors and witnessed by the superintendent. Subsequently the board in reliance upon these signatures approved the yearly contracts en masse.

Although the record before the arbitrator is not absolutely clear, it appears that only one of the instances of step-advancement occurred prior to Harborcreek Education Association (hereinafter Association) being recognized as the exclusive bargaining representative for the district's teachers on December 9, 1970. Thereafter, each and every labor contract entered between the district and Association, including the 1978-79 agreement applicable to this controversy, contained a general past practices clause in Article XXII. In relevant part Article XXII provides:

"A. Except as this agreement shall otherwise provide, all terms and conditions of employment applicable on the signing date of this agreement as established by the rules, regulations and/or policies of the Board in force on said date, shall continue to be so applicable during the term of this agreement. Unless otherwise provided in the agreement, nothing herein shall be interpreted and/or applied so as to eliminate, reduce nor otherwise detract from any teacher benefit existing prior to its effective date.

"B. All conditions of employment, teaching hours, extra compensation for duties outside regular teaching hours, relief period, leaves and general teaching conditions shall be maintained at not less than the highest minimum standards in effect at the time this agreement is signed, provided that such conditions shall be improved for the benefit of teachers as required by the express provisions of this agreement. This agreement shall not be interpreted or applied to deprive teachers of professional advantages heretofore enjoyed unless expressly stated therein . . .

"D. Any individual contract between the Board and an individual teacher heretofore or hereafter executed shall be subject to and consistent with the terms and conditions of this agreement. If an individual contract contains any language inconsistent with this agreement, this agreement, during its duration, shall be controlling."

The arbitrator expressly relied upon paragraphs A and B of Article XXII in upholding the grievance. The arbitrator concluded that the Board by approving four previous salary step advancements corresponding to the purchase of years of retirement credit, established this practice as a condition

of employment. In reviewing this conclusion our powers are extremely limited.

"To state the matter more precisely, where a task of an arbitrator, pera or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . . ' Ludwig Honold Mfg. Co. v. Fletcher, 405 F. 2d 1123, 1128 (3rd Cir. 1969). It was this approach which was meant to be suggested by the brief statement in International Brotherhood of Fireman and Oilers, Quoted supra, that 'the arbitrator's interpretation of the contract must be upheld if it is a reasonable one.' 465 Pa. at 366, 350 A. 2d at 809."[2]

Community College of Beaver County v. Society of the Faculty, 473 Pa. 576, 593-94, 375 A. 2d 1267, 1275 (1977). Applying this narrow standard, we cannot say that the arbitrator erred or that his con-

---

2. This standard of review is closely related to the "essence" test derived from United Steelworkers v. Enterprise Wheel & Car Corp., 303 U.S. 593, 396, 60 S. Ct. 1358, 1360 (1960) in which the Supreme Court announced:

"(A)n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the Arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

clusion is not rationally derived from the collective bargaining agreement.

The district argues that denying Mr. Foust step advancement was not a violation of Article XXII, paragraph A because the grievant was not denied a benefit under the contract. Further, the district argues that paragraph D quoted above requires that individual contracts be consistent with the collective bargaining agreement and that those previous contracts reflecting step advancement were inconsistent with the agreement. These arguments, however, beg the central question presented by this case, namely whether step advancement was a condition of employment under Article XXII of the agreement.

This court has recently considered the relevance of past practice evidence in interpreting collective bargaining agreements. See, Northwest Tri-County Intermediate Unit No. 5 v. Northwest Tri-County Intermediate Unit No. 5 Education Association, No. 7830-A-1980, opinion filed October 3, 1980. Quoting from Northwest, we there stated:

"A leading commentator and our supreme court (in County of Allegheny vs. Alleg. County Prison Employeees I.U., 476 Pa. 27, 381 A. 2d 1849 (1977)) have recognized that this evidence can be used (1) to clarify ambiguous contract language; (2) to implement general contract language; (3) to modify or amend apparently unambiguous language; (4) to create a separate enforceable condition of employment. See Mitenthal, Past Practice and the Administration of Collectve Bargaining Agreements, 59 Mich.L.Rev. 1017 (1961) . . . " Ibid, slip opinion at p. 8-9.

We note several distinctions between both

County of Allegheny, supra, and Northwest and the instant case. Neither of the labor agreements in the aforecited cases contained a past practices clause as represented by Article XXII in the present case. In Allegheny the past practices antedated any collective bargaining agreement whereas here it appears that at least three of the prior instances of step advancement occurred after execution of a collective bargaining agreement. Moreover, even if all of the prior instances of step advancement occurred before the execution of the initial labor agreement, that initial agreement contained a past practices clause recognizing existing conditions of employment. Finally, in Northwest, we believed the arbitrator erred because he relied upon evidence of past practices even though the agreement contained no past practices clause and the uncontradicted evidence indicated that the fact giving rise to the prior incidents were different than the facts under adjudication in Northwest.

In contrast with Northwest, the record here, including School District Exhibit 1, indicates that the facts underlying Mr. Foust's grievance are indentical to those instances where other teachers who requested step advancement after purchasing retirement credits were granted their request. We note that the record indicates that those employees listed on District Exhibit 1 as having not been given step advancement either (1) never requested it or (2) were not entitled to it because they were already at the highest step or were administrators.

Our conclusion is that the arbitrator's award is rationally derived from the agreement. The arbitrator could reasonably conclude that the conduct of prior superintendents and board presidents in executing contracts reflecting step advancement

for the purchse of retirement credits, and the en masse approval, albeit unknowingly, of these contracts by the board created a condition of employment within the language of Article XXII, paragraph A.[3]

The district argues strenuously that under the Public School Code of 1949, it is legally impermissable for the district and the association under their collective bargaining agreement to allow the superintendent to advance teachers on the salary scale after purchasing retirement credits. We agree with the district that, read together Section 1152 of the Code, 24 P.A. 11-1152 and Section 508, 24 P.S. §5-508, require approval of a majority of the board to advance a teacher along the salary scale. However, the arbitrator reasonably concluded that in fact the board in the previous instances approved advancement along the salary scale when its president executed the individual contracts and the board collectively approved them. Moreover, by agreeing to the inclusion of Article XXII, paragraph A in the labor agreement, the board has agreed to the continuation of this condition of employment and the giving of its approval in like instances in the future.[4]

For the above reasons the district's petition for review is denied.

---

3. While the precedential value of Ringgold Area School District v. Ringgold Education Assoc., _____ Pa. _____, 414 A. 2d 118 (1980) is questionable, we note that there the court, with several concurring opinions, upheld an arbitrator's award based upon an unwritten past practice where the agreement contained both a past practices clause and a clause requiring any modification to be in writing.

4. We intimate no opinion as the effect of the resolution of the board adopted on July 12, 1979. See District Exhibit 2.

## ORDER

And now, October 29, 1980, the petition of review filed by Harborcreek School District is dismissed and the requested relief denied.